JAMES R. PICKLER v. GLADYS WISE AND OTHERS, Appellants.

**Wills:** CONTEST: UNDUE INFLUENCE: EVIDENCE. In this will contest the evidence is held sufficient to support a verdict setting aside the will on the ground of undue influence.

**Same:** EVIDENCE: CONTRACTS BETWEEN HUSBAND AND WIFE. A contract between husband and wife intended to deprive her of her distributive share in his estate is admissible, in a contest of her will made in conformity with the contract, simply to show that the will was not the product of undue influence; and the court's limitation of its consideration for that purpose was proper.

**Same:** UNDUE INFLUENCE: FRAUD: DURESS: INSTRUCTION. The words fraud, duress and undue influence, are often used synonymously in connection with the contest of a will; and the court's instruction to that effect when intended simply for the guidance of the jury in its consideration of the evidence was proper.

*Appeal from Wapello District Court.*—HON. D. M. ANDERSON, Judge.

WEDNESDAY, OCTOBER 18, 1911.

ACTION at law to set aside a will on the ground of undue influence. Verdict and judgment for the plaintiff. The defendants appeal.—*Affirmed.*

*Jos. C. Mitchell,* for appellants.

*W. W. Cory* and *Seneca Cornell,* for appellee.

SHERWIN, C. J.—John and Lydia Overman were husband and wife. He owned a farm that he sold in September, 1891, for nearly $15,000, she joining in the deed. Of the price so received John Overman gave his wife $4,000 on the 18th day of December, 1891, and at the same time both husband and wife signed a contract which recited that fact, and in which John Overman agreed to give his wife a life estate in the homestead which they then occupied. The money and the homestead right were given on the following conditions:

Should the first party, John Overman, survive the said second party, then the said four thousand dollars, or any part thereof, or any property purchased therewith, which may remain at the death of the said second party, shall revert to the said first party. Should the said second party survive the said first party, then she shall have the full use, possession and control of the homestead during her life, and at her death the said homestead and four thousand dollars, or that portion thereof, if any, and any property purchased therewith, which remains at that time, shall go in equal shares to the grandchildren of the first party. It is agreed that the amounts above referred to and received by the said second party are to be considered as an advancement to her out of the estate of the said first party, and she agrees to accept and does accept the same as above provided as her full share of his said estate.

Lydia was the second wife of John Overman, and she died without issue. On the 10th day of October, 1895, John Overman made a will which provided that his wife, Lydia, should have the use during her life of the $4,000 already given her and the homestead, and that the remainder of both should go to his grandchildren. This will follows the terms of the agreement made in the contract of December, 1891. On the 10th day of October, 1895, Lydia Overman also signed a writing jointly with John Overman, which was designated "Acceptance of Lydia Overman," and which instrument was fastened to the will of her husband. It was as follows:

Know all men by these presents: That I, Lydia Overman, have heard read the foregoing will of John Overman and that I accept the provisions of said will in lieu of dower and of all claims for maintenance or allowance, or any other claims against said estate and acknowledge the receipt of the said sum of four thousand ($4,000) dollars and acknowledge that I have the same in my possession and under my control and that I received the said four thousand ($4,000) dollars and the right of the occupancy and use and control of the said homestead during my lifetime as full and complete satisfaction for any and all claims of dower, allowance and other claims that I might make against the estate of my said husband, John Overman, at the time of his decease. I hereby join in said will and declare this to be my will and testament so far as it relates to the said four thousand ($4,000) dollars and the right of the occupancy of the said homestead, that at the time of my death of whatever of said four thousand ($4,000) dollars remains unexpended, whether in cash or invested in property, and that the said homestead referred to at the time of my death shall go to the grandchildren of John Overman then living, share and share alike. It being the intention of this will and testament that whatever portion of money or property that I may own that I did not derive from said husband, John Overman, shall not be affected by this agreement and testament.

This instrument was probated as the will of Lydia Overman, and the present action was brought to set the probate and will aside on the ground that it was procured by the undue influence of the husband, John Overman.

The plaintiff is a brother of Lydia Overman, and the defendants are the grandchildren of John Overman and the administrator of the estate of Lydia Overman, who died in June, 1906, a few months before the death of her husband. The case was tried to a jury, and a verdict was returned finding that the instrument purporting to be the will of Lydia Overman was procured by undue influence. The appellants earnestly urge that the verdict is not sufficiently sup-

1. WILLS: contest: undue influence: evidence.

ported by the evidence, and that it should not be allowed to stand. The situation here is somewhat peculiar. The record shows that Mrs. Overman refused to join in the conveyance of the farm, unless one-third of the price to be received therefor was given to her. This demand her husband yielded to, and the contract of December was entered into. Whether the contract was agreed upon before the money was paid to Mrs. Overman does not clearly appear, but an inference may fairly be drawn from the evidence that it was. Mrs. Overman had the use of the money during the time between its payment and her death, and consequently she had it when the two wills were made. There is considerable evidence tending to show that she was dissatisfied with the agreement long before she finally signed the instrument probated as her will. The husband insisted all of the time that she make a will carrying out the terms of the contract, and she many times flatly refused to do so. He finally had the will prepared by an attorney, and left with him for his wife to execute. This she refused to do for nearly a year, saying to him on various occasions that it was not right, and did not dispose of her property as she wished, and as she thought it should be disposed of, but he kept on insisting and kept on harassing her until she signed it as he had had it drawn. While we consider the case a close one on the evidence, we reach the conclusion that the plaintiff made a fair case for the jury, and that the verdict should not be disturbed.

The defendants asked one of their witnesses to state what occurred in his presence relative to the contract between Mr. and Mrs. Overman. An objection of the plaintiff was overruled, and the court said: "The testimony of this witness with reference to the contract claimed to have been entered into between John and Lydia Overman is admitted, not as showing a contract between them in reference to his property, but her property, and only as

2. SAME: evidence: contracts between husband and wife.

evidence showing the circumstances surrounding the parties at the time of the execution of the will in question." After this ruling, the defendants offered in evidence the contract itself, and it was received over the plaintiff's objections, with the same limitation and for the same purpose stated by the court when ruling upon the preliminary question relative thereto. The appellants assign error because of the limitation.

It is enough to say that the ruling on the objections was in the appellants' favor, and that no exception was taken to the limitations. The court instructed that the contract of December, 1891, was of no force or effect under the statutes, but that it had been admitted in evidence as a declaration or statement of Lydia Overman, to be given such weight as it appeared to be entitled to.

The contract was clearly admissible for no other purpose than to show that the subsequent will was not the product of undue influence. Whether the contract was an enforcible one or not could have no bearing on the case, unless it was further shown that Lydia Overman knew that it was invalid and signed it to mislead her husband, and such a showing would have been prejudicial to the defendants' case. The contract was evidently made for the purpose of depriving the wife of her distributive share under the statute, and in so far as it related to that subject, at least, the instruction was clearly right. Code, section 3154; *Caruth v. Caruth,* 128 Iowa, 121; *Poole v. Burnham,* 105 Iowa, 620; *Frazier v. Andrews,* 134 Iowa, 624; *Miller v. Miller,* 104 Iowa, 186.

In its instructions the court told the jury that the words, "fraud, duress and undue influence," as used in the instructions, generally all mean the same thing, to wit, undue influence, and of this the appellants complain. We see no merit in the complaint. The statement was for the guidance of the jury in its consideration of the

3. SAME: undue influence: fraud: duress: instruction.

evidence under the instructions, and nothing more. Furthermore, the words are frequently used synonymously in contests of this kind. *In re Will of Hollingsworth*, 58 Iowa, 526; *Parker v. Lambertz*, 128 Iowa, 496; 14 Cyc. 1123.

The court fairly covered the request made by the appellants in the first instruction asked by them, not in so many words perhaps, but the substance of the request was clearly embodied in the instructions given.

We find no ground calling for a reversal, and the judgment is therefore *affirmed.*