MARY WORTH, Appellant, v. MILTON PIERSON, Executor, et al., Appellees.

No. 39036.

FEBRUARY 12, 1929.

REHEARING DENIED MAY 17, 1929.

*Swan, Martin & Martin,* for appellant.

*W. C. Bryant* and *J. J. Hess,* for appellees.

WAGNER, J.—The last will and testament of Elizabeth S. Pierson and also a codicil thereto were admitted to probate on the 29th day of April, 1926. The will was executed February 7, 1924, and the codicil on February 4, 1925. By the terms of the original will, the plaintiff was bequeathed the sum of $10. All the residue of the estate was bequeathed in one-eighth parts to the other sons and daughters of the testatrix and to the grandchildren, being children of two deceased sons. The codicil in terms confirms the original will, but provides that, if any one of the children or grandchildren should be indebted to her at the time of her death, such indebtedness, or notes owed, shall be distributed to them as a part of their share of the estate. The will names Milton Pierson as executor, without bond, and provides that, in the event that he is unable, for any reason, to act as such executor, her son, James Pierson, shall act as such executor, without bond. Milton Pierson qualified, and is now acting as executor of said estate. All of the legatees of the testatrix are parties to this suit. In what the plaintiff denominated "Amended and Substituted Petition," she alleges that the said Elizabeth S. Pierson executed said purported last will and testament and said purported codicil of said last will and testament by virtue of fraud, duress, and undue influence, and that, by reason of such fraud, duress, and undue influence, said instruments are not the last will and testament of Elizabeth S. Pierson. She prays therein that said instruments be set aside, and the probate thereof be set aside, canceled, and held for naught.

In an amendment to the "Amended and Substituted Petition," the plaintiff alleges that one Milton Pierson, the executor named in the last will and testament of Elizabeth S. Pierson, deceased, and one of the legatees therein, made false statements to the said Elizabeth Pierson in relation to the said Mary Worth, knowing that said statements were false, and knowing that Eliza-

beth Pierson would rely on the same, and that said Elizabeth Pierson relied upon said false statements made in relation to the character of said Mary Worth by the said Milton Pierson, and by reason thereof, destroyed a last will and testament in which the said Mary Worth was a legatee with a substantial interest in said estate, and made a new will and testament wherein the share of the said Milton Pierson was increased, and he was named as executor, and the share of the said Mary Worth was decreased to only $10; that the said will was the result of the fraudulent and deceitful conduct on the part of the said Milton Pierson in misrepresenting facts to his mother, Elizabeth Pierson, in relation to his sister, Mary Worth; and that, except for such false and fraudulent statements, the said Mary Worth would have inherited equally with her brothers and sisters.

The substance of defendant's answer is a general denial, except as to certain admissions therein made.

The plaintiff offered to prove by herself a conversation between her and her mother. Proper objection was made to the offer, as calling for a personal transaction or communication be-tween the witness and the deceased, which objection was sustained. This action was clearly correct, as to have allowed the witness to answer would have been in clear violation of the provisions of Section 11257 of the Code of 1924.

We will first visualize the facts as shown by the record. The testatrix was 94 years of age at the time of her death, to wit, April 11, 1926. The original will was executed, as aforesaid, on February 7, 1924, and the codicil, February 4, 1925. The plaintiff, Mary Worth, was the oldest daughter of the testatrix, and at the time of the trial, was just past 74 years of age. For approximately five years prior to January 18, 1924, the testatrix had made her home with the plaintiff and her husband. After the latter date, she apparently made her home with her son Milton Pierson, until September 10, 1925, when she went to the home of her daughter, Sophrona Smith, at Mankato, Kansas, and remained there until the time of her death, April 11, 1926. The testatrix left the Worth home on the 18th day of January, 1924, and about two weeks later, her son Milton, with a taxicab driver, came to the Worth home for her goods, and the testatrix then

said she was going to move to Milt's. It appears that there was not good feeling between the son Milton Pierson and his sister, Mary Worth. At the time of their leaving, the plaintiff made the statement that, if mother got sick, she wanted to hear, and her brother replied that he would not let her know anything if she (the mother) died. This conversation occurred in the presence of the mother.

It appears that plaintiff's husband, Tom Worth, in a general way, looked after her financial affairs during the time that the testatrix made her home with the Worths. During this period of time, he looked after the men who rented her place, drew her checks, etc. The banking business was done at a bank in Lewis, which the witness Kunze testifies was his bank. The record fails to reveal the name of said bank, which closed January 26, 1924. Sometime during that month, Milton Pierson and his mother went to the bank and demanded the papers belonging to the testatrix. The box containing certificates of deposit, a lease, and duplicate deposit tickets, notes, a sealed envelope, purporting to contain a will, Liberty bonds, and various other papers, was delivered to them. Sometime in May of 1924, Mr. Bryant and Mr. Pierson again went to the bank, at which time additional bonds in the amount of $250 or $300 were delivered. These bonds had not at any time been in Mrs. Pierson's box, but had been left at the bank for safe-keeping. The bank's receipt had been issued for them. It appears that these bonds had also been in another banking institution, the Oakland Savings Bank. Kunze testified that these bonds "were covered by receipts from our bank; that, at the time when Milt and his mother were there, they didn't ask for the bonds, and didn't present any receipt."

It thus appears that the bank was closed, and that the testatrix and Milton Pierson did have some difficulty in locating and getting possession of all of the bonds that belonged to her.

There was introduced in evidence a letter written by Milton Pierson, dated January 27, 1924, directed to Mr. H. C. Smith and family, in which he makes inquiry as to how much money his mother had on time deposit in the bank "when you folks came back with her, as Tom [the plaintiff's husband] said you figured it up he would not tell said he had never figured it but you had so she wants to know and so do I and write as soon as you get this for they have got her business in a bad shape and I want to

know so we can get things fixed out straight for her." This letter was produced by a sister of the plaintiff's, Sophrona Smith, who resides at Mankato, Kansas. This witness also testifies that she heard a conversation between Tom and Mary Worth and Elizabeth Pierson, in which conversation she took no part, and in which the parties discussed the reason why Elizabeth Pierson took the handling of her business away from Tom and Mary Worth. This conversation occurred in October, 1925. She testifies:

"I don't just remember this conversation, but he asked the question if she [Mrs. Pierson] thought he got away with any of her money. After hesitating a moment, she said she didn't know, only what Milt said."

Said witness also produced a letter written by Milton Pierson to his mother, under date of October 25, 1925, in which he says:

"I reckon old Flitterlip had lots to say I heard if she had stayed another week she would have killed you."

The letter is signed "M. P. Pierson, or old frozen rump." It is shown that, in referring to "Flitterlip" in the letter, he meant his sister, the plaintiff. Not much significance can be given to his use of the word "Flitterlip," as it is shown by the record that that was the plaintiff's nickname, by which she was recognized by other members of the family, as well as other people. It will be observed that Milton Pierson also had a nickname, by which he described himself in his signature to the aforesaid letter.

Tom Worth, the husband of the plaintiff, testified:

"At that time [time not designated], I heard Mrs. Elizabeth S. Pierson talking to my wife, when I was not taking any part in the conversation. She said Milt told her she was so much money short. I don't remember of anything else being said; I got so mad thinking I was accused of taking the money."

Another witness, Mrs. Mauk, testified that she lived the second house from the Milton Pierson home from the latter part of November, 1924, until April, 1925; that she had been present

in the Pierson home when Milton made remarks about the Worths. in the presence of Elizabeth Pierson.

"He said he didn't like them. He accused the Worths of cheating his mother, not dealing right with his mother in money matters. He said his mother didn't have all of the money that was supposed to come to her; said Mr. and Mrs. Worth were taking her money and keeping it back. I don't know how many times I heard him make this statement, but it was several times. I heard him say that the Worths could not come onto his place to see his mother. He said this in the presence of his mother, also. He said that Mrs. Worth made. his mother sleep upstairs, and that she was not able to go up and down stairs. He said that the Worths were keeping back some. of Mrs. Pierson's money; that they couldn't account for it. Mrs. Pierson was present when they said this, also."

Another witness, Enfield, testified that, about the time that Mrs. Pierson came to Milt's home, Milt told him that his mother was short two or three hundred dollars on a Liberty bond; that he didn't know where it was; but that she was short that much.

Witness Putnam testified that he remembers the incident when Elizabeth Pierson came down to Griswold to live with Milt, in 1924; that he had a conversation with Milt about that time, "and I believe he claimed to me that some of the money of Mrs. Elizabeth Pierson had been misappropriated from the bank through the Worths, that he had no account of."

The plaintiff testified that she never stole, took, or got away with a penny of her mother's money.

The defendant Milton Pierson, being called as a witness by the plaintiff, testified:

"No, it is not a fact that, along in January or February of 1924, I believed that my sister Mary Worth or her husband had gotten away with a part of my mother's estate. I didn't believe it up to 1925, or at the time the codicil was drawn."

He further testified that he was present at Lewis at the time that his mother got her papers; that the will was turned over to her at that time.

The foregoing is substantially all of the testimony. If the admissibility of all of the same be assumed, but not decided, has

the plaintiff, on the issues joined, made out a case for the jury? The court sustained defendants' motion for a directed verdict. The plaintiff, in her motion for a new trial, alleged that the court erred in sustaining said motion, and now assigns the ruling of the court thereon as error.

Upon the subject of undue influence, this court has made the following pronouncement:

"Influence, to be undue, within the meaning of the law, must be such as to substitute the will of the person exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the undue influence. It must be equivalent to moral coercion, must operate at the very time the will is made, and must dominate and control the making of it. *Henderson v. Jackson*, 138 Iowa 326; *Parker v. Lambertz*, 128 Iowa 496; *Perkins v. Perkins*, 116 Iowa 253; *In re Will of Richardson*, 199 Iowa 1320. The person charged with the exercise of undue influence need not be personally present. *Brackey v. Brackey*, 151 Iowa 99; *In re Will of Busick*, 191 Iowa 524. Undue influence is not established by proof of opportunity to exercise it. Importunity, request, and persuasion that do not go to the point of controlling the will of the testator are not enough, nor is it established by proof of opportunity and disposition so to do. *Zinkula v. Zinkula*, 171 Iowa 287; *Sutherland State Bank v. Furgason*, 192 Iowa 1295; *In re Estate of Townsend*, 128 Iowa 621. It is apparent, therefore, under these rules, that opportunity and disposition, plus persuasion and importunity, are not sufficient to take the question of undue influence to the jury. Contestants must go further than this, and show not only the existence of the facts, but that said undue influence existed, and controlled the maker of the instrument in the disposition he made of his property, substituting the will of the person exercising the influence for the will of the person making the writing." *In re Estate of Mott*, 200 Iowa 948.

In many of our recent cases, we have made, in substance, the same pronouncement. See *Wolfe v. Shroyer*, 206 Iowa 1021; *Wackman v. Wiegold*, 202 Iowa 1391; *In re Estate of Cooper*, 200 Iowa 1180.

'We do not understand that it is the appellant's contention that the case should have been submitted to the jury on the ground of undue influence. It is manifest that, within the rules announced in the foregoing cases, the evidence in the instant case is insufficient to constitute undue influence.

Appellant suggests her contention in the first paragraph of her argument, to wit:

"This case does not involve the ordinary case of undue influence, but rather is a case in which the plaintiff claims that the will should be set aside on the ground of fraud. It is true that 'fraud and undue influence' is often spoken when 'undue influence' alone is meant, but there usually is some fraud present in a pure case of 'undue influence.' However, 'fraud' or 'undue influence' are two separate grounds for the setting aside of a will. In a case of 'undue influence,' the will of another is substituted for the will of the testator; while in the case of fraud, the testator acts voluntarily, but his act is induced or influenced by the fraud of another."

It is thus apparent that it is her contention that the jury might find from the evidence that the will was induced by fraudulent representations made by Milton Pierson to the testatrix, and that the jury should be allowed to find that, if it was so induced, the will should be set aside, although the evidence fails to show undue influence, within the rules announced in the foregoing authorities.

We find it unnecessary to determine whether a will induced by fraudulent representations may be set aside because of the fraud, although the evidence is insufficient to constitute undue influence.

In the instant case, the witnesses to the will were not used as witnesses at the trial. There is no showing as to who was present when the will was drawn, nor what transpired at that time. There is no evidence that Milton Pierson ever said or did anything toward getting his mother to make the will in controversy. The testimony of Mrs. Mauk relative to representations made by him to his mother shows that they were made subsequent to the date of the execution of the original will. The record fails to reveal that any of the representations now relied upon by the

appellant were made by Milton Pierson to his mother at or prior to the time of the execution of the will.

The codicil, in terms, confirms the original will. There is no evidence as to what provision was made for the appellant in the former will. For aught that is shown by the record, the appellant fared no better in the former will.

It is not necessary that we determine whether all of the elements of actionable fraud would be required to be shown, to constitute fraud in such a case, conceding, arguendo, that a will induced by fraudulent representations may be set aside although the evidence is insufficient to constitute undue influence. It is sufficient to say that the record in this case fails to establish fraud. Therefore, if it be assumed, without being decided, that a will induced by fraudulent representations may be thereby invalidated although the evidence is insufficient to constitute undue influence, the appellant has failed in the requisite proof. The action of the trial court in directing a verdict for the appellees and in overruling appellant's motion for a new trial was correct. and the same is hereby affirmed.—*Affirmed.*

All the justices concur.