D. W. BATES, Receiver for Bank of J. C. CURRIER & SONS, Appellant, v. DORA C. ZEHNPFENNIG, Appellee.

No. 42915.

July 17, 1935.

Gill & Gill, for appellant.

Shull & Stilwill, for appellee.

RICHARDS, J.—Plaintiff-receiver commenced this action to recover the amount of five promissory notes. The notes were not in the possession of the receiver, having been surrendered to defendant and stamped "paid" by the bank more than two years before the appointment of the receiver. Before trial, the case was transferred to equity and is before us as a suit in equity. The defense consisted of a general denial and the affirmative allegation that long prior to the appointment of the receiver the notes had been paid, satisfied, and discharged and duly canceled by the bank and surrendered to the defendant. The plaintiff filed an amendment to petition alleging that through collusion and fraud, for the purpose of defrauding the depositors of said bank and the creditors of J. W. Currier, the said Currier and

defendant took said notes out of the bank, charging off the notes and marking them paid, without the defendant making any payment or giving any consideration for the notes; that the bank and said Currier were at said time insolvent, and the defendant knew of this insolvency; that the surrender and cancellation of the notes is null and void; and in the prayer of said amendment plaintiff prays judgment on the notes and that said charging off and surrendering of said notes be held null and void. There was a judgment and decree for defendant, from which plaintiff has appealed.

The bank of J. C. Currier & Sons, a private bank, located at Salix, Iowa, was founded in 1886 and conducted a continuous banking business until taken over by the superintendent of banking on February 2, 1933. Since 1922 J. W. Currier has been the sole proprietor of the bank. The defendant is the daughter of J. W. Currier.

On December 29, 1930, there was a transaction between the bank and J. W. Currier and defendant around which the entire controversy in this case revolves. At that time the notes sued on herein were canceled, stamped "paid", and surrendered to the defendant by the bank, acting through Currier. It is the contention of defendant that the transaction constituted a payment, compromise, and satisfaction of the notes, all coming about in following manner: In 1911 one Edgecombe, a resident of England, came to Salix and divided among his three children a tract of land near Salix which he had owned for forty years. To his daughter Mrs. Currier, wife of J. W. Currier, mother of defendant, Edgecombe conveyed as her portion a 40-acre tract and a 53-acre tract. There was evidence that it was the often expressed intention of Mrs. Currier that these two tracts were eventually to be the defendant's sole property; this being a family arrangement well understood and often mentioned. In October, 1922, Mrs. Currier was hopelessly ill in Sioux City, and defendant was summoned from California. She arrived a short period before her mother's decease. A few days before her death, apparently to carry out her intention above referred to, Mrs. Currier executed a deed conveying the two tracts mentioned; the grantee therein being J. W. Currier. It is the testimony of defendant and J. W. Currier that before the deed was executed the defendant requested that the title be taken for defendant in the name of J. W. Currier instead of in her own

name, owing to personal reasons that the defendant had at that time, and that on account of such request J. W. Currier took the deed in his name, but for the defendant. They testify that the land so conveyed was always afterwards recognized as defendant's property. The 40-acre tract was subsequently sold for $8,000, but defendant had not received the proceeds. The 53-acre tract had extensive buildings and improvements appurtenant to a 160-acre farm from which 53 acres had been carved. Defendant and Currier testify that on December 29, 1930, a settlement and adjustment was made between the bank and J. W. Currier on the one hand and defendant on the other by which defendant canceled her claims in the land on account of her alleged ownership of the two tracts, in consideration of the cancellation and surrender of her promissory notes upon which this action was brought.

It is first contended by plaintiff that the evidence of the defendant, to establish her alleged ownership of the two tracts and that Currier held the mere legal title for her, is incompetent, and that consequently there is no evidence to establish any estate of defendant in the two tracts of land. Plaintiff relies on section 10049 of the Code, which provides that declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance, excepting as to trusts resulting from the operation or construction of law, and upon section 11285 of the Code, known as the statute of frauds. Bearing on the question of the competency of parol evidence to establish a trust, in Neilly v. Hennessey, 208 Iowa 1338, 220 N. W. 47, it is said:

"It has been repeatedly held by this court that an oral express trust in real property is not void, but provable only by an instrument in writing. The rule thus stated is no more firmly established than are the rules that the admission of the trust by the grantee' or the full or partial performance thereof takes the transaction out of the statute, and permits proof by parol both of the fact of the admission and of the performance."

In McCormick v. Griffin, 116 Iowa 397, 90 N. W. 84, it is said:

"Appellant says, however, that at most F. P. Griffin held the Jackson township land in trust for his wife; that such trust

cannot rest in parol; * * * This contention is faulty, in that it assumes that a contract within the statute of frauds is void, and cannot be regarded, even when executed. Such a contract is not void. True, the trustee may refuse to perform, and the beneficiary, being unable to prove the trust, must suffer. But, if the contract is fully carried out, it does not lie in the mouth of a third party to say the contract was void, and that it therefore conferred no rights."

In Sheffield Milling Co. v. Heitzman, 192 Iowa 1288, 184 N. W. 631, it is said:

"After a trust has become fully discharged, it ceases to be vulnerable to the objection that it may not be established, in the first instance, by parol testimony. A trust required by statute to be in writing is not void, but merely unenforceable, when resting in parol, and the conveyance by the trustee in discharge of the trust is based on sufficient consideration as against strangers."

From these authorities, and in view of the admission of the trust by Currier, and the completed discharge thereof, it is evident the parol evidence offered by defendant was not incompetent.

■■■ Plaintiff also relies on Code, section 11257, often referred to as the "dead man's statute," and which has to do with the competency of the witness rather than the testimony. We fail to find objection made to the competency of the witnesses. But, if made, it would avail nothing, because the plaintiff is not within the class protected by that statute.

■■■ Plaintiff claimed the transaction of December 29, 1930, was fraudulent; one fact relied on to establish such fraud being the insolvency of Currier and his bank on that date. A considerable part of the assets was real estate. There is a difference of opinion among the witnesses as to its value. The case was tried in February, 1934. The question of values was as of December 29, 1930. The testimony is voluminous on account of the many items, the values of which were involved, and it is not feasible to set out in an opinion more than our conclusion. We come to the same result as did the district court, that insolvency was not established.

Plaintiff claims that, if the interest of defendant in the two

tracts of land be admitted, even then there was such gross inadequacy of consideration for the cancellation of the notes that fraud must be inferred. The 53 acres was part of a 160-acre farm, the remaining 107 acres of which was, or became, an asset of the bank. The 160 acres as a whole was worth in the neighborhood of $200 per acre. There was credible testimony that the improvements on the 53 acres were of themselves worth $10,000. The acquiring of the 53 acres was essential to maintaining the value of the 107 acres. An accounting for past rentals by Currier, while not expressly referred to in the testimony of the transaction, nevertheless was a possibility that was not insisted on by the defendant and avoided by the transaction. The 40-acre tract had been sold for $8,000 in 1926. We cannot find in these assets and advantages accruing to the bank any grossly inadequate consideration for extinguishment of the notes.

It is also argued by plaintiff that defendant's evidence is not of such weight as to establish the defendant's alleged equitable ownership of the two tracts of land. It is true that the father had held the legal title since 1922. It is true that during that period there is no evidence of accountings between Currier and defendant. It is also true that defendant and Currier, being daughter and father, suggests a careful scrutiny of the testimony, but likewise it offers a reasonable explanation of a trustful relationship and an explanation of the fact of the title remaining in the father and lack of any showing of strict accounting between them. The district court had the advantage of observing the witnesses, and that court accepted the testimony as worthy of belief. As said in Rembe v. Ferguson, 183 Iowa 29, 166 N. W. 720:

"Where, however, the finding upon a material question of fact turns wholly or principally upon the veracity of witnesses who testified in person before the trial court, we are always disposed to accord weight to its holding thereon and interfere therewith with reluctance."

In the case at bar we fail to find any indicia of unworthiness in the testimony of defendant or of the witness Currier, and it seems to us that the record is sufficient to establish that Currier held no interest but only the record title in the two tracts of land involved in the satisfaction of the notes in suit.

170

The judgment and decree of the district court must be, and is, affirmed.—Affirmed.

ALBERT, ANDERSON, POWERS, HAMILTON, DONEGAN, PARSONS, and MITCHELL, JJ., concur.