MARIE TIERNAN et al., and MICHAEL FITZGERALD, SR., Executor, Appellants, v. MARGARET BRULPORT, Appellee.

No. 45054.

FEBRUARY 13, 1940.

George J. Dugan and Larry H. Dugan, for appellants.

Harry Wifvat and Leland S. Forrest, for appellee.

MITCHELL, J.—Elizabeth Fitzgerald died testate, at her residence in Perry, Iowa, on April 7th, 1938. Her husband died in the year 1914, and all of the property which she possessed, she had inherited from her husband. She had four daughters, Margaret Brulport, Kathryn McCarthy, Marie Tiernan, and Elizabeth Tiernan. On October 31, 1936, Mrs. Fitzgerald deeded to her daughter, Margaret Brulport, the real estate described as Lot 12, Block 28, city of Perry, which was occupied by her as her home. This action was commenced in equity, by the other three daughters of Elizabeth Fitzgerald against their sister, Margaret Brulport, to set aside the above referred to deed. There was a trial, at which a great deal of evidence was offered, the lower court denied the relief prayed for.

This action was brought on the theory that Margaret Brulport occupied a confidential and fiduciary relationship with her mother, and that she took advantage of this confidential and fiduciary relationship. That the deed was secured by undue influence, constructive fraud and without consideration.

Unfortunately family fights over property are quite numerous, and this court has been called upon to decide many cases involving the same legal questions as in the case at bar.

We quote briefly from a few of our cases. Curtis v. Armagast, 158 Iowa 507, 522, 138 N. W. 873, 879, opinion by Justice Weaver:

"While the relation of parent and child is nearly always given as an illustration of confidential relations, it does not

follow that all transactions between persons occupying that relation are presumptively invalid. Indeed, it may be said that as a general rule the conferring of benefits by a parent upon a child is presumptively valid. The unfavorable presumption arises only where the child, by reason of its youth and inexperience or other special circumstances, is to some degree under the dominion, control or paramount influence of the parent, or where the child is the dominant personage in that relationship and the parent has become the dependent one, trusting herself and her interests to his advice and guidance. Mulock v. Mulock, 31 N. J. Eq. 594; Parker v. Parker (N. J.) 5 Atl. 586; White v. Daly (N. J. Ch.) 58 Atl. 929; Fitch v. Reiser, 79 Iowa 34 [44 N. W. 214]; Nobles v. Hutton, 7 Cal. App. 14 (93 Pac. 289); Gibson v. Hammang, 63 Neb. 349 (88 N. W. 500); Doyle v. Welch, 100 Wis. 24 (75 N. W. 400); Cole v. Getzinger, 96 Wis. 559 (71 N. W. 75); Mott v. Mott, 49 N. J. Eq. 192, (22 Atl. 997).''

In appellee's brief they refer to the fact that Judge Evans dissented in the case of Curtis v. Armagast, and they say that Judge Evans ''was one of the greatest judges that ever sat on the Iowa Supreme Court''. The writer of this opinion agrees with the distinguished counsel in his tribute to the great service rendered to the bar and the bench by the late Judge Evans.

In the case of Johnson v. Johnson, 196 Iowa 343, 348, 191 N. W. 353, 355, opinion by Judge Evans, this court said:

''It is a rare case where the dominant individual in a fiduciary relation can sustain a gift to himself by the one who is dependent upon him. Whereas the defendant had assisted her husband in his few matters of business before his illness, she had now, by his illness, become his sole dependence. If someone else had sought to obtain a conveyance of his property, she would have been his independent adviser, and would have protected him against ill advised action. Inasmuch as she became the beneficiary of this transaction, he was necessarily deprived of her help and advice. In such a case, equity inquires, Who was his helper? Did he have any? Did he have independent advice, legal or otherwise? If his wish had been to refuse the gift, was there anyone to stand for him and to put forward the refusal? It is incumbent upon the defendant to make some answer to these questions. The burden is not met

by showing simply that, at the time of the execution, he said that it was all right, or that he was glad of it. The same influence which induced the execution would likewise induce just such remarks.''

In the recent case of Ennor v. Hinsch, 219 Iowa 1076, 260 N. W. 26, we have discussed many of the cases and therefore do not find it necessary to again review the authorities.

The legal principles involved are not in real dispute, as the law is well settled. It is the application of these legal principles to the facts involved that is difficult.

We turn to the record to ascertain the facts.

Elizabeth Fitzgerald had four daughters and one son. Her husband died in 1914, and left all of his property with the exception of $2,000 to his widow. The property consisted of a home in Perry, a half section of land and personal property, all of which was unincumbered. The son died about 2 years after his father. There is evidence that the mother had her sister write to Mrs. Margaret Brulport, who at that time lived in Des Moines, that she desired that Margaret come back home and live with her. Mrs. Brulport at that time was divorced from her husband and had one young son named Harry. She was working in Des Moines and supporting the boy. In 1918 Mrs. Brulport returned to Perry and lived with her mother until the time of the mother's death in 1938.

The evidence is in dispute on many questions, but all agree that the mother had a very kindly and affectionate feeling toward all of her daughters, and they were all very considerate of their mother and did everything to make life pleasant for her. There apparently was no feeling between the sisters up until a few months before the mother's death.

Margaret Brulport lived with her mother for almost 20 years. She ran the farm, signed the leases, did the banking business for her mother, and as the years went along she handled all the business that the mother had. Mrs. Brulport had no income, and her bills and her son's were paid out of the mother's money. There is a long record covering the many transactions during the 20 years. At Margaret's request the mother borrowed $2,700, and gave a mortgage on the house, but Margaret in writing agreed to pay the $2,700. Needless to say it was not paid at the time of the mother's death.

Margaret went to see attorneys in regard to matters pertaining to her mother's business and directed them what to do.

In October 1936 Mrs. Fitzgerald had reached the age of 83 years. Margaret went to the office of an attorney and had the deed to the home prepared. She then took it home and had her mother sign it, no one else was present. Margaret then took the deed down to a lawyer who was also a notary public and asked him to place his acknowledgment on the deed. He informed her that as he had not seen Mrs. Fitzgerald sign the deed, he could not acknowledge it. Margaret then asked him to come to the home. A few days later he went to Mrs. Fitzgerald's home, Margaret was present. The notary asked Mrs. Fitzgerald if it was her signature and if she knew that it was a deed to the home. She said she did. The deed was then given to Margaret Brulport and by her returned to the notary, who retained it until after Mrs. Fitzgerald's death, when it was turned over to Mrs. Brulport and by her recorded. It can hardly be said that this old lady of 83 years, who was ill at the time, had an independent adviser. The deed was prepared by the daughter, the only witness to the signature was the grantee in the deed, this same daughter, and the acknowledgment was made in her presence. She lived alone with her mother during the entire time this transaction was pending. There was no consideration for the deed, true it was the claim of the grantee that it was in payment for service rendered her mother during the 20 years she lived with her. The answer to this, however, is that Margaret Brulport filed a claim against the estate for $11,965 plus 6 per cent interest for services rendered her mother during the time she lived with her. There is the evidence of numerous witnesses that the mother had time and again said that after her death, she wanted the property including the home evenly divided among her daughters.

The evidence shows that early in 1937 Margaret Brulport purchased on credit from a store in Perry better than $200 worth of merchandise and in order to do this she signed her mother's name to the credit application. There were also various notes that Elizabeth Fitzgerald's name was signed to which were reduced to judgment. The money secured by these notes was for Margaret Brulport.

Thus we find that Margaret Brulport during this long period of time handled her mother's business, that she signed her mother's name to various instruments, that she directed attorneys in preparation of various legal instruments, what they should contain including a codicil to her mother's will. That she had the deed to the home, which is now sought to be set aside, prepared. That she was the only person present at the time that it was signed. That she was present when the notary public took the acknowledgment. That there was no consideration for the deed. In view of such a record we find that there was a confidential fiduciary relationship between the mother and the daughter. The burden of proof cast upon the appellee has not been met, and that therefore the deed cannot be sustained.

It necessarily follows that the decree entered below must be and it is accordingly reversed.—Reversed and remanded.

HAMILTON, C. J., and RICHARDS, HALE, SAGER, BLISS, MILLER, and OLIVER, JJ., concur.

STIGER, J., takes no part.