IN RE ESTATE OF STEPHEN W. BROOKS.

SYLVIA HINES et al., Contestants, Appellees, v. ELLA BROOKS, Proponent, Appellant; DONALD ASH et al., Appellees.

NELLIE BOREL et al., Appellees, v. ELLA BROOKS, Appellant; DONALD ASH et al., Appellees.

No. 45342.

Frank D. Riley and D. M. Kelleher, for appellant.

Nagle & Hill, for appellees.

Miller, J.—The decedent, Stephen W. Brooks, died May 2, 1939, at Clarion, Iowa, leaving surviving him his widow, Ella Brooks, and as heirs at law four daughters and four children of a deceased daughter. All of said daughters were children by a prior marriage. The decedent and Ella Brooks had no children as a result of their marriage.

Ella Brooks and S. W. Brooks were married at Clarion on

December 7, 1935. S. W. Brooks then owned a quarter section of land in Wright county, clear of encumbrance, and personal property consisting of cash, farm equipment and livestock.

On January 15, 1936, S. W. Brooks executed the purported will. Provision was made for the payment of debts. Five dollars each was bequeathed to three of his daughters and to three of his grandchildren. Ella Brooks was devised and bequeathed a life estate in all of his property with remainder in fee to the fourth daughter and fourth grandchild. Ella Brooks was designated executrix to serve without bond. In the event of contest of the will, each contestant was to forfeit her bequest and all rights to any part of the estate. The interest of such contestant was bequeathed to such residuary devisee who should not contest the will.

S. W. Brooks and Ella Brooks lived on the farm with a grandson of Brooks, one of the residuary devisees under the will. On March 3, 1937, they had a sale of much of the personal property on the farm and in October 1937 had a closing out sale of the balance of it. On July 28, 1937, S. W. Brooks purchased a home in Clarion. The contract was made in the name of S. W. Brooks and Ella Brooks, the consideration was paid by S. W. Brooks, but title was taken in the name of Ella Brooks alone. They moved into this home in town in October 1937, and resided there for the balance of S. W. Brooks' lifetime.

The farm was sold for $22,000, the sale being completed March 29, 1938. The consideration consisted of $1,000 cash, transfer of an 80-acre farm valued at $8,000 and a mortgage back on the farm for $13,000. The mortgage named Ella Brooks as the sole mortgagee.

The three daughters of decedent, other than the residuary devisee, contested the probate of the will on the ground that its execution was procured through coercion and undue influence on the part of Ella Brooks, proponent thereof. All four daughters were plaintiffs in an action in equity wherein they sought to reform the deed to the home in Clarion and the $13,000 mortgage on the 160-acre farm and have the name of S. W. Brooks substituted for Ella Brooks in each instrument, asserting that the execution of said instruments to Ella Brooks as sole grantee and

mortgagee was the result of fraud, deceit, duress, coercion and undue influence on the part of Ella Brooks. Plaintiffs also sought an accounting for the income from such property subsequent to decedent's death and a partition of the property.

By agreement of the parties, the court entered an order consolidating the causes and providing that they be tried together as an equitable action. Trial was had. The court entered a decree which denied probate of the purported will, reformed the deed to the home in Clarion and the mortgage on the 160 acres by substituting the name of Stephen W. Brooks for that of Ella Brooks as grantee and mortgagee, ordered an accounting by Ella Brooks to the administrator of the estate of Stephen W. Brooks for the income from property belonging to the estate, ordered partition of the property but continued the partition proceedings pending settlement of the estate. Ella Brooks, proponent and defendant, has appealed. The causes have been consolidated for submission in this court.

While many legal propositions are argued by both sides herein, the principal contention of appellant is that the evidence is insufficient to sustain the findings of fact upon which the trial court based its decision herein. The evidence of appellees is primarily circumstantial. This, of course, is not unusual in this type of litigation. Before undertaking to dispose of the propositions presented by appellant, we deem it advisable to briefly review the evidence relied upon by appellees, which persuaded the court to decide the controversy in their favor.

At the time of his death, Stephen W. Brooks was about 70 years of age. His first wife died about 1932. They were then residing upon the 160-acre farm. Following her death, Brooks continued to reside upon the farm with his grandson, William Clyde Brooks, and a daughter, Florence Brooks. Florence did the housework until about December 1934, at which time she was adjudged insane and was taken to Cherokee where she later died. Brooks and his grandson continued on the farm, keeping house and operating the farm. During the fall of 1935, Brooks became acquainted with appellant, who was then Ella Stone, a widow, 57 years of age. She had been twice married, her first marriage at the age of 21 resulting in a divorce ten years later, in 1910. In 1918 she married Mr. Stone. He died

in 1932. After his death, she lived with a daughter by her first marriage, in Tulsa. She worked part of the time there as a housekeeper. She then moved to Appanoose county, Iowa, and lived with her mother. She then moved to Des Moines where she stayed in the home of an uncle for a time, and then did housekeeping. She advertised in a Des Moines paper for a position as housekeeper. Among the answers was a response from the decedent. Her acquaintance with Stephen W. Brooks was the result of his response to her advertisement.

Appellant and decedent were married at the Methodist parsonage in Clarion by Rev. J. C. Buthman on December 7, 1935. After the marriage ceremony, they went to the farm where she met for the first time some of decedent's children and grandchildren. None of the appellees herein knew or had heard of appellant until after the ceremony had been performed.

Appellant and decedent continued to reside on the farm until October 1937. The land was farmed by decedent and his grandson during the season of 1936. The grandson left the home and the land was leased to a Mr. Pletcher in 1937.

The farm sale held in March 1937 was arranged by appellant. Appellant negotiated with Ed. O. Turk for the purchase of the home in Clarion. Both she and decedent looked at it, but appellant attended to the details. The contract was made in the name of decedent and appellant, but the deed was made out to appellant alone, at her request in the absence of decedent. The initial payment was made from the proceeds of the sale in March and the balance of the purchase price was paid from the sale in October.

On January 3, 1937, appellant and decedent opened a joint banking account, which was continued until December 20, 1938, on which date appellant wrote a check for the balance of the account and deposited it in her personal account. The bank statements for the joint account show a large number of checks. Only five of these appear to have been drawn by decedent and they were for relatively small amounts.

After appellant went to live on the farm, she was active in the management of the business on the farm. She directed work in the fields, looked after selling of hogs and corn, and hauling to market, sold grain at the elevator, assumed author-

ity concerning a partnership threshing machine in figuring the profits and making division among the partners, not only arranged for the farm sale in March 1937, with the auctioneer, but also arranged for the closing out sale in October 1937 with her brother as auctioneer. The record shows few business transactions by decedent when appellant was not present. When the will involved herein was drawn, appellant was present. After the will was drawn, appellant took charge of it and retained possession of it.

Brooks suffered a stomach and heart attack in 1934. He had another attack in 1936, at which time the ailment was diagnosed as a malignant condition of the stomach. Appellant knew of this condition. Decedent suffered a severe hemorrhage on the day of the sale in October 1937. He was fed liquid foods. During their married life, with the exception of the first few days, decedent and appellant occupied separate bedrooms. Following 1936, decedent appeared to be growing weaker, to be in physical distress and easily fatigued. He was always friendly to his children and grandchildren. Appellant left the home for personal visits and seldom did she notify the children she was leaving. In April 1939, decedent went to see his daughter Crystal Toftee. Appellant had previously told the daughters that if he ever left home, she would put him where he couldn't get away. Appellant inquired of decedent's whereabouts. That same day, without discussing the matter with any of the children, appellant filed an information, charging decedent with insanity. Decedent was examined by a physician. Appellant was the only other witness before the commission. Upon this complaint, decedent was committed to the hospital at Cherokee on April 18, 1939. A few days later appellant went to Cherokee and obtained permission to have her husband returned to Clarion. He returned on April 29, 1939. He died three days later.

Shortly after her marriage, at a meeting of Farm Bureau ladies, appellant, in discussing her marriage, said that she didn't marry decedent for love and didn't care whether they lived together as husband and wife or not; what she was interested in was his pocketbook. In the early part of 1936, in discussing her affairs with a visitor at the Brooks home, she stated that she came to Clarion to obtain employment as a housekeeper, but she

had refused to come unless decedent would marry her, that decedent was not too competent to handle his business and she was going to look after it herself. About the same time, she took charge of the placing of insurance on the buildings. A witness who had known decedent for many years testified that he had been a hard working, industrious man, a good trader, reasonably shrewd, and at least up to the average of men of his general walk of life; prior to his marriage to appellant, he was exceptionally strong willed and determined; after his marriage, he seemed entirely changed.

In 1936, appellant told a former sheriff, when he called at the home to see decedent, that she was the one that looked after the business for Mr. Brooks. At the same time appellant arranged to sell some hogs. The check was given to decedent and appellant stated that the check was too much money for him to handle, and asked for it. Appellant transacted business at the elevator, was the dominating influence, paid the bills and negotiated purchases. In the early part of 1936, she took over the transaction of paying a note to a daughter of Henry Thomas; she grabbed the money out of decedent's hands and conducted herself in such a manner that Thomas remarked to Brooks, ''By golly, it looks like you got a boss.'' Appellant later told this same witness that she was looking out for herself and the Brooks family had all they were going to get. Appellant made a statement to another witness that she came into the Brooks home for money and that was what she was going to have.

When appellant instructed Turk to make out the deed to the town property in her name in decedent's absence, she asked Turk if he couldn't go ahead and make out a deed to the farm to her and not let Mr. Brooks know what the papers were for and transfer the title to her without his knowledge. When the 160-acre farm was sold, appellant was present when the contract was drawn, but decedent was not. The $1,000 down payment was paid by a check, which was delivered to appellant, endorsed and cashed by her. During the negotiations, the real-estate agent did not talk to decedent when appellant was not present.

The abstract of record herein comprises 424 pages, without the index. Obviously, we have not undertaken to set out all the evidence. The foregoing, however, presents the high-

lights of the evidence relied upon by appellees, which formed the basis for the trial court's decision and upon which appellees rely for an affirmance thereof in this court.

In seeking a reversal at our hands, appellant challenges the findings of fact by the following assertions: (a) the evidence shows that the will was legally executed and is insufficient to support the claim of undue influence on the part of appellant; (b) decedent's health did not commence to fail until more than a year after the marriage with appellant; (c) decedent's daughters testified to no evidence of coercion and domination by appellant; (d) the grandson who lived in decedent's home after the marriage with appellant saw no evidence of coercion; (e) there is no evidence to support the assertion that appellant inveigled decedent into the marriage; (f) the claim that appellant had her name inserted in the deed to the house in town without decedent's knowledge is not supported by credible evidence; (g) the preponderance of the evidence supports a finding that the exchange of the farm with a mortgage back in favor of appellant was so intended by decedent; (h) the evidence shows decedent was of determined and stubborn disposition, he assisted his daughters and deeded a home to one of them after the marriage with appellant, he was not controlled by appellant.

In determining the questions of fact herein, the method of trial below becomes important. As heretofore pointed out, by agreement of the parties, the causes were consolidated and tried together as an equitable action. This court has repeatedly held that, where an action is tried below as an equitable action, it will be so considered here and, accordingly, will be tried de novo. Walters v. Heaton, 223 Iowa 405, 417, 271 N. W. 310, 317; In re Estate of Moore, 211 Iowa 804, 808, 232 N. W. 729, 730; Murphy v. Hahn, 208 Iowa 698, 701, 223 N. W. 756, 759; Sutherland State Bank v. Furgason, 192 Iowa 1295, 1307, 186 N. W. 200, 205; Todd v. State Bank, 182 Iowa 276, 294, 295, 165 N. W. 593, 599.

Even though a case is tried de novo in this court, we have nevertheless repeatedly recognized that, where the testimony is conflicting, great weight is accorded the findings of the trial court, because the witnesses are before him and he is in a far

better position to pass upon their credibility than is this court, which is limited to the printed record. Kurth v. Kansas City Life Ins. Co., 227 Iowa 242, 252, 288 N. W. 90, 95; Bates v. Zehnpfennig, 220 Iowa 164, 169, 262 N. W. 141, 144; Andrew v. Citizens State Bank, 220 Iowa 219, 228, 261 N. W. 810, 814; Westendorf v. Westendorf, 187 Iowa 659, 670, 174 N. W. 359, 362; Rembe v. Ferguson, 183 Iowa 29, 33, 166 N. W. 720, 721.

■ In this case, there is evidence from which appellees assert we should find a confidential relationship existing between the proponent and the decedent. Such relationship affects the burden of proof where the action is to set aside a gift *inter vivos*. The rule will be considered hereafter. That rule, however, is not applicable where the proceedings challenge a testamentary gift. In such proceedings, the burden of proof still remains upon the contestant. Reed v. Reed, 225 Iowa 773, 776, 281 N. W. 444, 445; Pirkl v. Ellenberger, 179 Iowa 1122, 1132, 162 N. W. 791, 795; Will of Boyle, 186 Iowa 216, 222, 172 N. W. 280, 282; Graham v. Courtright, 180 Iowa 394, 405, 161 N. W. 774, 778.

■ In challenging the sufficiency of the evidence to sustain the finding of the trial court that the will should be denied probate because the execution thereof was the result of undue influence and coercion by the proponent thereof, appellant relies upon the following decisions of this court: Estate of Johnson, 222 Iowa 787, 798, 269 N. W. 792, 798; Cookman v. Bateman, 210 Iowa 503, 507; 231 N. W. 301, 304; Hann v. Hann, 202 Iowa 807, 811, 211 N. W. 495, 497; Will of Johnson, 201 Iowa 687, 690, 207 N. W. 748, 750; Estate of Mott, 200 Iowa 948, 949, 205 N. W. 770, 771. The rule of these cases is concisely stated in Estate of Johnson, supra (222 Iowa at page 798, 269 N. W. at page 798), as follows:

"Influence, to be undue, must be such as to substitute the will of the person exercising the influence for that of the testator thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the undue influence. It must operate at the very time the will is made and must dominate and control the making of it. Worth v. Pierson, 208 Iowa 353, 223 N. W. 752.

"Undue influence is not established by proof of opportunity

to exercise it and disposition to do so. In re Will of Richardson, 199 Iowa 1320, 202 N. W. 114.

"Importunity, requests, and persuasion that do not go to the point of controlling the will of the testator are not sufficient to constitute undue influence. Perkins v. Perkins, 116 Iowa 253, 90 N. W. 55; Worth v. Pierson, supra; Cookman v. Bateman, 210 Iowa 503, 231 N. W. 301."

Appellant also asserts that many of the circumstances which the court deemed to be persuasive were too remote to be relevant and should have been disregarded, relying upon our decision in McCollister v. Showers, 216 Iowa 108, 112, 248 N. W. 363, 365, wherein we state:

"Many of the instances relied upon as circumstances tending to prove undue influence are remote in point of time from the date on which the respective instruments were signed, and none of them referred to the execution of a will. The point urged, however, is that Mary E., the daughter, admittedly the chief beneficiary of the will, whenever opportunity was afforded therefor, for many years complained to the testator of his unfair treatment of her and of his generosity to the contestant. It is not shown, however, by direct or circumstantial evidence that the will was ever the subject of conversation between the father and daughter. Any inference to this effect must be drawn from remote, and not very persuasive, facts."

At the same page, we also state:

"It is true that direct evidence of undue influence is not necessary. This may be established by circumstantial evidence. In re Will of Busick, 191 Iowa 524, 182 N. W. 815; In re Will of Jahn, 195 Iowa 74, 189 N. W. 974; Haman v. Preston, 186 Iowa 1292, 173 N. W. 894; Monahan v. Roderick, 183 Iowa 1, 166 N. W. 725."

The circumstantial evidence introduced herein persuaded the trial court to find that appellant dominated decedent from the time of their marriage, her actions were mercenary and domineering, the result of a plan and scheme conceived by her at the time of their marriage and successfully put into operation so that the undue influence present, exercised and exerted by ap-

pellant at the time of the execution of the will by him dominated his will and mind so that the purported will was not the will of and did not express the intention of decedent, but was rendered invalid and accordingly was denied probate.

This court has recognized that, where a theory is sought to be established by circumstantial evidence, the facts relied upon must be of such a nature and so related to each other that it is the only conclusion that can fairly and reasonably be drawn from them. Asbach v. Chicago, B. & Q. Ry. Co., 74 Iowa 248, 250, 37 N. W. 182, 183. This rule was reaffirmed by this court in the recent case of Jakeway v. Allen, 227 Iowa 1182, 1190, 290 N. W. 507, 511. Quite a number of our cases which have interpreted the rule are collected and discussed in the case of Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425. Applying the rule as so interpreted by us to the evidence herein and giving to the findings of the trial court the weight to which we think they are entitled, because of his more advantageous position in passing upon the credibility of the testimony, we are disposed to the view and hold that the evidence was sufficient to sustain such finding and that the decree insofar as it denied probate to the purported will herein must be and it is affirmed.

The circumstances in this case are unusual and we have been unable to find any former decision of this court directly in point. However, the following decisions relied upon by appellee would seem to announce principles in accord with those applied by the trial court and tend to support his decision herein: Brogan v. Lynch, 204 Iowa 260, 214 N. W. 514; In re Will of Busick, 191 Iowa 524, 182 N. W. 815; Liddle v. Salter, 180 Iowa 840, 163 N. W. 447; Pickler v. Wise, 152 Iowa 644, 132 N. W. 815; Sullivan v. Kenney, 148 Iowa 361, 126 N. W. 349. It might not be out of place to also add that, even with the will denied probate, appellant is still entitled to one third of decedent's estate.

Turning to that portion of the decree which reformed the deed to the home in town and the $13,000 mortgage on the farm, the questions to be decided are not nearly so difficult as those presented by the will contest. The evidence was sufficient to justify the court's finding that a confidential relationship existed which casts the burden upon appellant to sustain the

purported gifts to her and we are of the opinion that she failed to sustain such burden. Tiernan v. Brulport, 227 Iowa 1152, 290 N. W. 53; Stout v. Vesely, 228 Iowa 155, 290 N. W. 116; O'Brien v. Stoneman, 227 Iowa 389, 288 N. W. 447; Ennor v. Hinsch, 219 Iowa 1076, 260 N. W. 26; Johnson v. Johnson, 196 Iowa 343, 191 N. W. 353.

Motion to dismiss, submitted with the case, is overruled.

By reason of the foregoing, the decree herein appealed from is affirmed.—Affirmed.

RICHARDS, C. J., and SAGER, HALE, HAMILTON, STIGER, BLISS, and OLIVER, JJ., concur.