**DAVIS–EISENHART MARKETING COMPANY, INC., An Iowa Corporation, Appellee,**

v.

**Roger BAYSDEN, Appellant.**

No. 94–988.

Supreme Court of Iowa.

Oct. 25, 1995.

Thomas D. Hanson of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellant.

David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

In 1992, when Eisenhart and Associates of Des Moines and Davis Marketing Company, Inc. (both food brokers) proposed to merge the two corporations, Roger Baysden was a shareholder in one of the corporations. He dissented from the proposed merger and thereby put in motion the procedures of Iowa Code section 490.1330 (1993) to value his interest for buy out purposes. When the parties could not agree on a price, Eisenhart Marketing Company filed an action under Iowa Code section 490.1330 to determine the "fair value" of the stock. The district court set the value of Baysden's interest, and Baysden appealed, contending the value was too low and that the court erred in refusing sanctions against the corporation. We affirm.

Three issues are raised: (1) what is the proper standard of review, (2) what is the value of the dissenter's shares, and (3) did the district court properly deny attorney fees and costs?

## I. *The Scope of Review.*

Iowa Code section 490.1330 provides the method for determining the value of a dissenting shareholder's stock, but it does not state whether the action is at law or in equity. Following the trial in this case, we decided *Sieg Co. v. Kelly,* 512 N.W.2d 275 (Iowa 1994). In that case, we noted that the predecessor to Iowa Code section 490.1330 (Iowa Code § 496A.78 (1977)) provided expressly that the action would be in equity and that our review would be de novo. *See Sieg,* 512 N.W.2d at 278.

In *Sieg,* we concluded that, because the new statute did not incorporate the provision that the action would be in equity, the omission by the legislature must have been intentional. We concluded that our scope of review would be at law. *Id.; see also* 12B William B. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5906.10, at 378 (perm. ed. rev. 1993).

These parties, apparently noting the failure of section 490.1330 to specify the form of action, stipulated that it would be tried in equity. The first issue is whether we should abide by the stipulation of the parties with respect to the scope of review, or the rule of *Sieg,* which held that it should be at law.

We cannot, of course, permit litigants to bind the court with stipulations as to the law, *Polk County Bd. of Supervisors v. Polk Commonwealth Charter Comm'n*, 522 N.W.2d 783, 791 (Iowa 1994); however, we ordinarily hear cases on appeal in the manner in which they were treated in district court. *See, e.g., Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). In addition, we have said that we will abide by stipulations of the parties as to the form of trial. For example, in *In re Estate of Custer*, 229 Iowa 1061, 295 N.W. 848 (1941), the parties agreed that the case would be tried in equity, although proceedings on a claim in probate are ordinarily at law. *Id.* at 1063–64, 295 N.W. at 851. We stated:

> Fundamentally, proceedings on a claim in probate are by ordinary proceedings.... However, even in probate proceedings, the parties may stipulate that the trial be had by equitable proceedings. In the event of an appeal, the proceedings are still equitable and the trial here is de novo.

*Id.* (citations omitted); *accord In re Estate of Brooks*, 229 Iowa 485, 492–93, 294 N.W. 735, 739 (1940); *In re Estate of Moore*, 211 Iowa 804, 808, 232 N.W. 729, 730 (1930).

This plaintiff is willing to abide by its stipulation for a trial in equity, but it questions whether, as a policy matter, the court should consider itself bound by a stipulation that effectively expands our scope of review and imposes the additional burden incident to reviewing a record de novo.

Although review in these cases is said to be de novo, this does not mean that we decide the case in a vacuum, or approach it as though the trial court had never been involved. Thus,

> [e]ven though a case is tried de novo in this court, we have nevertheless repeatedly recognized that, where the testimony is conflicting, great weight is accorded the findings of the trial court, because the witnesses are before him and he is in a far better position to pass upon their credibility than is this court, which is limited to the printed record.

*Brooks*, 229 Iowa at 492–93, 294 N.W. at 739. The present case illustrates this; the trial court found certain valuation witnesses more credible than others, and we give weight to those considerations.

Notwithstanding the rule of *Sieg* on the scope of review in dissenter evaluation cases, we adhere to our general rule that we will hear a case on appeal in the same manner in which it was tried in the district court. We therefore consider this case de novo.

## II. *The Valuation.*

Iowa Code section 490.1301(4) provides this definition:

> *"Fair value"*, with respect to a dissenter's shares, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.

There is usually no established market for the shares of a closely held corporation, so the valuation of a dissenter's shares is far from an exact science. *See Sieg*, 512 N.W.2d at 279–80. Because so many factors bear on the question of value, we have said that "[i]t is unwise to attempt to state every factor that may bear on value of stock in a particular case." *Robbins v. Beatty*, 246 Iowa 80, 91, 67 N.W.2d 12, 18 (1954). Despite the plethora of factors that may be examined in these cases, however, we have identified three of the more widely used methods of appraisal: market value, investment value, and net asset value. *Sieg*, 512 N.W.2d at 278; *Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374, 378 (Iowa 1984).

In this case, the district court considered eight bases for valuation: the book or net asset value, the adjusted asset value, the amount actually paid for the company in connection with the merger, the amount suggested by a consultant approximately two years before the merger, the amount Baysden himself had agreed to pay for the company stock approximately one year before the merger, and three appraisals offered by experts.

Valuations in the record (excluding an appraisal by Baysden's expert) range from a

negative amount based on the book value to $11.24 per share. While Baysden's expert set the value at $27.00 per share, based on a general rule of thumb using gross commissions in the business, the court found this evidence not credible.

Just prior to the merger, two minority shareholders other than Baysden had negotiated the sale of their shares based on a value of $1.075 per share plus a "signing bonus," raising the total consideration for the stock to $9.56 per share. The court concluded that, based on all of the evidence, this value was the most appropriate for purposes of establishing the value of the dissenter's shares. On our review of the record, we agree.

■ Baysden claims, however, that the low valuation was based on an assumed company liability that was not valid. Specifically, he claims that the principal shareholder of the acquiring corporation had obtained a deferred compensation package that Baysden claims was fraudulent and amounted to a breach of fiduciary duty. Of course, a majority shareholder may not favor himself to the detriment of the minority. *Cookies Food Prods., Inc. v. Lakes Warehouse*, 430 N.W.2d 447, 451 (Iowa 1988); *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 194 (Iowa 1980). If such wrongdoing occurs, the shareholders may seek recovery for breach of fiduciary duty. *See Linge*, 293 N.W.2d at 194.

■ However, Baysden's attack on this alleged wrongdoing is misplaced for two reasons: (1) an action to establish fair value is not the proper vehicle for recovery of damages for the wrongdoing, and (2) the claims lack identity of parties—the valuation issue involves the corporation while a claim for fraud or breach of fiduciary duty would be against the alleged wrongdoer.

The Delaware Supreme Court has considered this issue and has held that fiduciary duty/common-law fraud claims are not allowed in appraisal actions. *See Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1143 (Del. 1989) (distinguishing the case because of its "unusual facts"); *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1189 (Del.1988).

■ We hold that any claim of breach of fiduciary duty must be presented in a separate action and that it is not appropriate to consider it in a case under section 490.1330 to value the shares of a dissenting shareholder. On our de novo review of the record, we agree that the "fair value" of the stock for purposes of section 490.1330 is $9.56 per share, and that this amount should not be increased on a ground that the corporate liability in question was not valid.

### III. *The Denial of Attorney Fees and Costs.*

■ Iowa Code section 490.1331(2) provides sanctions in the form of fees, expenses of counsel, and expert witness fees against both the corporation and the dissenting shareholder if the court finds that either party acted arbitrarily, vexatiously, or in bad faith. The court found that the evidence failed to show that the corporation acted "arbitrarily, vexatiously, or not in good faith" and rejected Baysden's claim for sanctions.

The court found that, while the corporation offered Baysden substantially less than the amount ultimately found by the court to be the fair value of the shares ($3.43 per share against $9.56 per share), this disparity was not so great as to constitute sanctionable conduct.

Moreover, the court pointed out that initially Baysden demanded $37.00 per share for his interest, which was $10.00 per share above the amount that his own appraiser said it was worth. In view of this and the other circumstances of the case, the court believed that the low figure submitted by the corporation did not constitute the type of conduct that should call for sanctions against it.

There is necessarily a considerable amount of discretion in imposing sanctions, and we believe that the court did not abuse that discretion. Accordingly, we affirm on the sanction issue and the other issues raised.

**AFFIRMED.**