# IN THE SUPREME COURT OF IOWA

No. 45 / 05-1670

Filed September 14, 2007

**SHARON MOHAMMED and
DORIS WHIGHAM CURRY, as
Co-Administrators of the Estate
of JERRY WHIGHAM**,

     Appellants,

vs.

**E. ANTHONY OTOADESE, M.D.**,

     Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, James C. Bauch, Judge.

Both parties seek further review of a decision by the court of appeals granting a new trial. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

D. Raymond Walton of Beecher Law Offices, Waterloo, for appellants.

Jennifer E. Rinden, Connie Alt, and Sarah J. Gayer of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

**STREIT, Justice.**

Following a defense verdict in a medical malpractice case, the estate of Jerry Whigham sought a new trial claiming it was prejudiced by the erroneous admission of certain evidence. The court of appeals granted a new trial based on testimony concerning Whigham's prior lawsuit against Hy-Vee for a slip-and-fall injury. Although the testimony should not have been admitted, we vacate the decision of the court of appeals because we find the evidence was not prejudicial to the estate. Moreover, we find neither evidence of payments by Medicare and Medicaid nor evidence of Whigham's failure to follow his doctors' recommendations prejudiced the estate. We vacate the decision of the court of appeals and affirm the district court's denial of the estate's motion for a new trial.

## I. Facts and Prior Proceedings.

Jerry Whigham was referred to Dr. E. Anthony Otoadese for an enlarged thyroid. Dr. Otoadese is a cardiothoracic and vascular surgeon in Waterloo. Whigham's thyroid had enlarged to the extent it was pressing on his trachea, right lung, and superior vena cava, a large vein. In February 2001, Dr. Otoadese performed surgery by opening Whigham's chest and removing the enlarged thyroid. During this process, Whigham's recurrent laryngeal nerves were injured.

After the surgery Whigham was unable to breathe normally. He was diagnosed with bilateral paralysis of his vocal cords. A tracheostomy tube was installed which allowed Whigham to breathe through the tube. In December 2002, Whigham removed the tube to clean it, and was unable to replace it. His sister attempted to help him, but she was also unable to get the tube back into his throat. Whigham suffered cardiac arrest and went into a coma.

In February 2003, Sharon Mohammed, who was Whigham's niece and conservator, filed a medical malpractice action against Dr. Otoadese, claiming during the surgery in 2001 Dr. Otoadese negligently damaged Whigham's recurrent laryngeal nerves. Whigham died while the suit was pending. Mohammed and Whigham's sister, Doris Whigham Curry, as co-administrators of Whigham's estate, were substituted as the plaintiffs in the action.

At trial, the fighting issue was whether Dr. Otoadese breached the standard of care by removing Whigham's thyroid through his chest rather than through his neck. The estate presented the expert testimony of two doctors. Dr. Russell Smith, an ear, nose and throat specialist, testified an enlarged thyroid should be removed through the neck because there is a better chance of protecting the recurrent laryngeal nerves during surgery. Dr. Richard Waldorf, a retired general surgeon, testified Dr. Otoadese breached the applicable standard of care by failing to identify and protect the recurrent laryngeal nerves during surgery.

In his defense, Dr. Otoadese testified Whigham had a rare type of enlarged thyroid because it was very large and was about ninety-five percent in the chest area. He agreed most enlarged thyroids can be removed through the neck, but stated the specific circumstances of this case were such that Whigham's enlarged thyroid had to be removed through the chest. He testified he did not look for the recurrent laryngeal nerves because Whigham was not in very good health, and he wanted to remove the enlarged thyroid as quickly as possible.

Additionally, three other doctors testified on behalf of Dr. Otoadese. Dr. Marnix Verhofste, a cardiothoracic surgeon, and Dr. Courtney Harris, a retired cardiovascular and thoracic surgeon, both testified Dr. Otoadese properly removed Whigham's thyroid through the chest based on the

thyroid's unusually large size and location. Dr. Verhofste stated that during this type of surgery it is very difficult to find the recurrent laryngeal nerves. Dr. Louis Alt, an ear, nose and throat specialist, testified Dr. Otoadese acted in a reasonable manner.

The jury returned a verdict in favor of Dr. Otoadese. The estate filed a motion for new trial, contesting several evidentiary rulings. The district court denied the motion for new trial. The estate appealed arguing the trial court erred by: (1) permitting Dr. Otoadese to introduce evidence of Whigham's lawsuit against Hy-Vee; (2) permitting the introduction of evidence that Whigham's medical bills were paid by Medicare and Medicaid; (3) not permitting Dr. Smith to testify about a certain medical treatise; (4) prohibiting the estate from introducing evidence that Dr. Otoadese did not have privileges to perform thyroidectomies at Allen Hospital; (5) refusing to admonish the jury to disregard the display of emotion by Dr. Otoadese; (6) permitting Dr. Otoadese to introduce evidence of Whigham's noncompliance with his doctors' recommendations in the years before the surgery; and (7) refusing to grant a new trial based on the cumulative effect of the alleged errors.

The court of appeals granted the estate a new trial. It held the trial court abused its discretion by ruling the evidence of Whigham's action against Hy-Vee was admissible. The court found the trial court did not err in allowing evidence of payments made on behalf of Whigham by Medicare and Medicaid. It made no decision regarding the treatise or Dr. Otoadese's privileges. Finally, it held evidence of Whigham's noncompliance may be admissible on retrial if it is determined to be relevant to the issue of proximate cause.

Both parties sought further review, which we granted. Dr. Otoadese argues the court of appeals should not have granted a new trial because the

evidence concerning Whigham's action against Hy-Vee was not prejudicial to the estate. The estate argues the court of appeals properly granted a new trial based on the admission of evidence of the Hy-Vee lawsuit but erred with respect to the evidence of payments by Medicare and Medicaid and Whigham's noncompliance. The estate urges this court to affirm the court of appeals' granting of a new trial but requests we prohibit on retrial the admission of evidence of Medicare and Medicaid payments and Whigham's noncompliance. For the reasons that follow, we vacate the decision of the court of appeals and affirm the district court.

### II.     Scope of Review.

We review the district court's determination of relevancy and admission of relevant evidence for an abuse of discretion. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000); *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). An abuse of discretion exists when "the court exercised [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997) (citing *State v. Vanover*, 559 N.W.2d 618, 627 (Iowa 1997)).

### III.     Merits.

### A.     Prior Lawsuit Against Hy-Vee.

Before trial, the estate filed a motion in limine requesting an order prohibiting the defense from presenting any evidence regarding a lawsuit Whigham filed against Hy-Vee for a slip-and-fall injury that occurred at one of its grocery stores in 2000. In resisting the motion, defense counsel argued the Hy-Vee lawsuit was relevant to rebut the estate's contention Whigham intended to file the present case against Dr. Otoadese but was not able to do so before slipping into a coma. Counsel stated

> we think it is very relevant that [Whigham] found his way to a lawyer [after Dr. Otoadese removed his thyroid] and got a

lawsuit on file, but it wasn't this one. It was a case against Hy-Vee. And that's what we want to offer it for.

Counsel for the estate responded: "this is an attempt to try to make it look like Mr. Whigham was [a] litigious person. . . . That's the danger here, and this is really more prejudicial than probative . . . ." The court ruled Dr. Otoadese could offer evidence of the Hy-Vee lawsuit.

On appeal, defense counsel now contends she was only trying to impeach Curry who testified about her brother and his life. Defense counsel attempted to show Curry did not know her brother as well as she claimed. After Curry acknowledged she did not know much about Whigham's other medical conditions, defense counsel asked Curry about her knowledge of the Hy-Vee lawsuit:

> Q. What did [Whigham] tell you about falling in a store? A. He said he just tripped over a banana peeling or something. I think that's what he said. He said no more to me about it. I don't know anything else about it.
> Q. Was that an incident involving that, you believe, occurred at the Hy-Vee store? A. I think so.
> . . . .
> Q. And that would have been in 2000, February of 2000. Are you aware that he filed a lawsuit about that? . . . . A. I don't know.
> . . . .
> Q. He didn't discuss whether or not he filed a lawsuit? A. Right.
> . . . .
> Q. So you don't know anything about Jerry filing a lawsuit in February 2002 about a fall at the Hy-Vee store. . . . . A. I have the same answer. I do not know anything about it.
> Q. And just so I'm clear, ma'am, in February of 2002 that was before Mr. Whigham had come to stay with you prior to his death; correct? A. I think so.

We find the trial court abused its discretion in allowing defense counsel to cross-examine Curry about the Hy-Vee lawsuit. Whigham's lawsuit against Hy-Vee was not relevant because it did not "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the [present] action more probable or less probable . . . ."

Iowa R. Evid. 5.401 (defining relevant evidence). On appeal, Dr. Otoadese argues the subject was properly broached because the estate raised the subject of Whigham's "affairs" on direct examination. *See State v. Holmes*, 325 N.W.2d 114, 117 (Iowa 1982) ("Cross-examination may deal with *matters* inquired into on direct, and questions fairly within the area of those matters constitute proper cross-examination."). But that is not exactly true. Curry was on the stand describing Whigham as a person and explaining how he suffered after the surgery. She never testified she knew about his "affairs"—legal, financial, or otherwise. It is a stretch for Dr. Otoadese to argue that simply because Curry testified about Whigham, his previous lawsuit concerning an injury completely unrelated to the present action is a proper subject on cross-examination. Curry's lack of knowledge concerning the lawsuit had little impeachment value. Moreover, even if the Hy-Vee lawsuit was somehow relevant—which we doubt—the information should have been excluded under rule 5.403 (allowing relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

Nevertheless, the erroneous admission of evidence does not require reversal "unless a substantial right of the party is affected." Iowa R. Evid. 5.103(a). In other words, the admission of evidence must be prejudicial to the interest of the complaining party. *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 183 (Iowa 2004). This requires a finding that it is "probable a different result would have been reached but for" the admission of the evidence or testimony. *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992); *accord State v. Rodriquez*, 636 N.W.2d 234, 244 (Iowa 2001); *see also Mercer v. Pittway Corp.*, 616 N.W.2d 602, 612 (Iowa 2000) (" 'Although a presumption of prejudice arises when the district court has received irrelevant evidence over a proper objection, the presumption is not

sufficient if the record shows a lack of prejudice.' " (quoting *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000))).

We find the estate suffered no such prejudice with Curry's testimony concerning the Hy-Vee lawsuit under the unique facts of this case. *Cf. Nepple v. Weifenbach*, 274 N.W.2d 728, 734 (Iowa 1979) (granting a new trial due to the "sufficient likelihood of prejudice" to the plaintiff where the defense counsel questioned plaintiff on the amounts of past settlements). The questioning was brief in the context of a seven day trial. Both parties offered credible expert testimony to support their respective positions. Based upon our review of the record, the focus of the trial appeared to be the expert testimony. Consequently, we cannot say the result would have probably been different had the testimony regarding the Hy-Vee lawsuit been excluded. *See Mays*, 490 N.W.2d at 804 (finding defense counsel's questions concerning plaintiff's prior claims against other persons or companies were improper but not prejudicial). Thus, the court of appeals erred by granting a new trial on this ground.

We note, however, that it is the duty of trial courts, upon timely objection, to prevent the introduction of evidence regarding unrelated prior claims. Such evidence can be very distracting and improperly impugn the merits of the case being tried. *See Nepple*, 274 N.W.2d at 733 (noting " 'litigiousness, in the eyes of most people, reflects upon character' and that 'hostility is ordinarily felt against one who constantly requires services of a court of law for the adjustment of life's problems' " (quoting *Lowenthal v. Mortimer*, 270 P.2d 942, 945–46 (Cal. Ct. App. 1954))). Our ruling in this case should not be read as tacit approval for introducing inadmissible evidence on a pinch-of-salt basis. Our standard for reversal may prove inadequate in the event the trial bar continues to be successful at introducing inadmissible evidence of prior unrelated claims. At this time,

we rely upon trial judges to resist creative efforts to inject potentially prejudicial, irrelevant evidence into the record.

### B. Disclosure of Payments Made by Medicare and Medicaid.

Before trial, both parties sought determinations on the admissibility of Whigham's medical expenses. Whigham was charged almost $800,000 for the medical care he received concerning his thyroidectomy and subsequent complications. His health care providers accepted $304,844 from Medicare, Iowa Medicaid, and Illinois Medicaid[1] in satisfaction of the charges. The estate sought to introduce the amount billed as probative of the extent of Whigham's injury. The estate also claimed it was entitled to request damages for the amount actually paid because Medicare and Medicaid would have to be reimbursed in the event of any recovery in this case. Finally, the estate argued the jury should not be told the bills were paid by Medicare and Medicaid.

Dr. Otoadese sought to exclude *all* evidence of medical expenses arguing Iowa Code section 147.136 (2003) barred recovery of such expenses.[2]

The district court held the estate could claim damages for the amount it would have to repay Medicare and Medicaid. The court also ruled the jury could be told the bills had been paid by Medicare and Medicaid.

_____

[1]We will hereafter refer to Iowa Medicaid and Illinois Medicaid as simply "Medicaid."

[2] Under Iowa Code section 147.136, a plaintiff in a medical malpractice case may not be awarded damages for

> the cost of reasonable and necessary medical care, rehabilitation services, and custodial care, . . . to the extent that those losses are replaced or are indemnified by insurance, or by governmental . . . benefit programs or from any other source except the assets of the claimant or of the members of the claimant's immediate family.

On appeal, we are asked to determine whether the trial court abused its discretion in allowing Dr. Otoadese to present evidence the bills were paid by Medicare and Medicaid.[3] The estate contends the trial court's ruling "had the effect of introducing the issue of insurance into [the] trial." It argues "the jury . . . could conclude that there should not be any verdict in [the estate]'s favor for the reason that [Whigham's] medical expenses had been covered by insurance."[4]

The estate claims admitting evidence of a plaintiff's medical insurance coverage is just as improper as admitting evidence of a defendant's liability insurance coverage. However, assuming Medicare and Medicaid are analogous to insurance, this contention is not supported by Iowa law. Iowa Rule of Evidence 5.411 states "[e]vidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully." There is no similar rule regarding medical insurance. In fact, Iowa Code section 668.14 expressly permits the admission of evidence concerning a plaintiff's medical insurance (but not a state or federal program) in personal injury cases.[5] Moreover, the reasons for excluding evidence of the existence of liability insurance— knowledge of a defendant's liability insurance may "influence jurors to bring in a verdict against a defendant on insufficient evidence [and may] cause[]

_____

[3] Because a new trial is not warranted in this case, we need not determine whether the trial court correctly interpreted Iowa Code section 147.136.

[4] On appeal, the estate asserts a new reason to exclude evidence of Medicaid. It contends "an injured party can suffer even greater prejudice by the perception that he is on the 'public dole.' " Because the estate failed to preserve this issue for appeal, we do not address it.

[5] Iowa Code section 668.14(4) states "[t]his section does not apply to actions governed by section 147.136." Since we need not determine whether section 147.136 is applicable to the present case, we offer no opinion as to the applicability of section 668.14. Instead, we simply offer section 668.14 as an illustration of the legislature's decision to permit the admission of evidence of medical insurance in personal injury cases.

jurors to bring in a larger verdict than they would if they believed the defendant would be required to pay it," *Laguna v. Prouty*, 300 N.W.2d 98, 101 (Iowa 1981)—are not applicable to medical insurance coverage. *See* Iowa Code § 668.14(2) (requiring a court to permit evidence and argument as to the plaintiff's costs for procuring medical insurance and any rights of indemnification or subrogation by the insurance company). Had the jury found Dr. Otoadese was negligent, we doubt it would have returned a verdict in the doctor's favor simply because government programs paid for Whigham's medical expenses. Moreover, the jury was informed Medicare and Medicaid were entitled to reimbursement out of any recovery in the event the jury determined the estate was entitled to damages. We cannot say the district court ruling prejudiced the estate. Therefore, the district court properly denied the estate's motion for a new trial on this ground.

### C.    Whigham's Noncompliance.

On direct examination, defense counsel questioned Dr. Verhofste concerning Whigham's alleged noncompliance with his doctors' recommendations in the years prior to the surgery. The estate alleges the trial court erred in allowing this line of questioning because it was "irrelevant" and "more prejudicial than probative." *See* Iowa Rs. Evid. 5.401; 5.403. At trial, the estate argued evidence of Whigham's noncompliance could "cause this jury to look at whether Mr. Whigham was at fault." As a result, it contends it is entitled to a new trial.

Dr. Verhofste testified he reviewed Whigham's medical records and found "he was very, very noncompliant." Defense counsel asked the doctor what noncompliance means. Dr. Verhofste said "compliance means when the doc tells you take these medicines, you take them." Specifically, Dr. Verhofste testified Whigham "was asked to deal with [his enlarged thyroid], surgery or medicine, and he refused." The doctor also said Whigham

refused to release his records from the Mayo Clinic to Dr. Otoadese.  Dr. Verhofste then explained:

> [I]f the patient doesn't want any information to come from a previous hospitalization, that could create a problem.  And you just have to rely on what the patient says. So you know, I think overall for a physician it's a difficult situation to deal with somebody who doesn't share in that information.  And finally the one who pays the price for it is the patient himself, I think.

The alleged noncompliance Dr. Verhofste commented upon occurred prior to the surgery Dr. Otoadese performed on Whigham.  Thus, Whigham's noncompliance may not be considered in terms of comparative fault.  *See DeMoss v. Hamilton*, 644 N.W.2d 302, 306 (Iowa 2002) (stating "in a medical malpractice action, the defense of contributory negligence is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice claim is based").  However, Dr. Otoadese never pled comparative fault.  Instead, he sought to admit the evidence to explain why Whigham's thyroid was so large and all of the circumstances concerning Whigham's medical care.  In addition, Dr. Otoadese wanted the jury to know he did not have the benefit of reviewing all of Whigham's medical records because Whigham refused to release them.

We find the evidence relevant to Dr. Otoadese's decision to remove Whigham's thyroid through his chest rather than through his neck.  Moreover, we find the evidence was not "more prejudicial than probative" as the estate contends.  Dr. Otoadese is entitled to explain the circumstances he considered in making his decision.  Evidence of Whigham's noncompliance and its role in treatment was well documented in the

medical records admitted into evidence. Moreover, the estate minimized Dr. Verhofste's testimony on cross-examination. Dr. Verhofste conceded obtaining Whigham's prior thyroid scans would not have "really matter[ed]" to Dr. Otoadese's treatment of Whigham because a current scan is more important in determining the appropriate care. Thus, we find the trial court properly allowed evidence of Whigham's noncompliance. The estate is not entitled to a new trial on this ground.

## IV. Conclusion.

We find the estate was not prejudiced by either the erroneous admission of testimony concerning Whigham's prior lawsuit against Hy-Vee, or the disclosure that Medicare and Medicaid paid Whigham's medical expenses. Moreover, the district court did not err by allowing evidence of Whigham's noncompliance. It was error to order a new trial.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**