# IN THE COURT OF APPEALS OF IOWA

No. 19-1021
Filed June 3, 2020

**SYDNEY BOWLIN,**
　　　　Plaintiff-Appellee,

**vs.**

**WILLIAM CODY SWIM,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Warren County, Randy V. Hefner, Judge.


　　　　William Cody Swim appeals the district court's custody ruling placing his and Sydney Bowlin's child in Bowlin's sole legal custody, among other things. **AFFIRMED.**


　　　　Benjamin Folladori of Marberry Law Firm, P.C., Urbandale, for appellant.

　　　　Eric Borseth of Borseth Law Office, Altoona, for appellee.


　　　　Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

Following a contentious custody battle, William Cody Swim (Cody) appeals the district court's ruling placing his and Sydney Bowlin's child in Bowlin's sole legal custody. Cody challenges various provisions of the district court's ruling, including the legal custody determination. Both parties request the award of appellate attorney fees. Upon our de novo review of the record, we affirm and we decline to award appellate attorney fees.

### I. Scope and Standard of Review.

Our review of equitable proceedings is de novo. *See* Iowa R. App. P. 6.907; *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005); *see also Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). This requires reviewing the entire record and deciding anew the factual and legal issues preserved and presented for review. *Hensch*, 902 N.W.2d at 824. "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Id*. A de novo review "does not mean [the appellate courts] decide the case in a vacuum, or approach it as though the trial court had never been involved." *Davis-Eisenhart Mktg. Co. v. Baysden*, 539 N.W.2d 140, 142 (Iowa 1995). Rather, "great weight" is given the findings of fact of the trial court where the testimony is conflicting. *See id*. (citation omitted). This is because the trial court, with the advantage of listening to and observing the parties and witnesses, is in a far better position to weigh the credibility of witnesses than the appellate court which is limited to a written record. *See In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986); *Hensch*, 902 N.W.2d at 824; *see also In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984); *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009)

(recognizing the district court can "listen to and observe the parties and witnesses" and giving weight to the district court's credibility determinations); *Birusingh v. Knox*, 418 N.W.2d 80, 82 (Iowa Ct. App. 1987). Unlike this court, the trial court has the front row seat to observe the "witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand," and the witness's "nonverbal leakage" showing "[h]idden attitudes, feelings, and opinions" not reflected in the cold transcript the appellate court reviews. Thomas Sannito & Peter J. McGovern, *Courtroom Psychology for Trial Lawyers* 1 (1985). The trial judge thus is in the best position to assess witnesses' interest in the trial, their motive, candor, bias, and prejudice. *See State v. Teager*, 269 N.W.2d 348, 351 (Iowa 1936). Thus, we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). Furthermore, we will affirm the district court unless the district court failed to do substantial equity. *Hensch*, 902 N.W.2d at 824. And because each family presents its own strengths and challenges, we base our decision on the unique circumstances of each case. *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *Hensch*, 902 N.W.2d at 824.

"If there has been a finding of contempt, we review the evidence to assure ourselves that the court's factual findings are supported by substantial evidence. The district court's legal conclusions are reviewed for errors at law." *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995) (citation omitted). "A contemner's sentence is reviewed for an abuse of discretion." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).

Awarding trial attorney fees is reviewed for an abuse of discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006) (reviewing award of trial attorney fees).

Evidentiary rulings are generally reviewed for an abuse of discretion. *See Mohammed v. Otoadese*, 738 N.W.2d 628, 631 (Iowa 2007) ("We review the district court's determination of relevancy and admission of relevant evidence for an abuse of discretion."); *see also In re Marriage of Mennen*, No. 09-1821, 2010 WL 2384865, at *3 (Iowa Ct. App. June 16, 2010) (finding court abused its discretion in admitting and considering therapist's "letter in arriving at its decision"); *In re Petition of Ziegler*, No. 05-0911, 2006 WL 623685, at *2 (Iowa Ct. App. Mar. 15, 2006) ("We reverse an evidentiary ruling of the district court only if the court abused its discretion, to the complaining party's prejudice."). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Fenton v. Webb*, 705 N.W.2d 323, 326 (Iowa App. Ct. 2005). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013) (quotation omitted).

But if the evidentiary ruling is based on hearsay evidence, our review is for errors at law. *See id.* (noting "we generally review the district court's admission of hearsay evidence for errors at law" unless "the basis for admission of hearsay evidence is the expert opinion rule," where "we will employ an abuse of discretion standard").

Issues of statutory interpretation are reviewed for correction of errors at law. *Fishel v. Redenbaugh*, 939 N.W.2d 660, 662 (Iowa Ct. App. 2019).

## II. Discussion.

On appeal, Cody challenges the district court's ruling in many respects. First, he asserts the court erred in admitting the child custody evaluation and requests the case be remanded to the trial court to enter a ruling without consideration of the report. As to custody, Cody points out Sydney's petition requested the child be placed in her and Cody's joint legal custody and she did not change her request until trial. Cody argues the district court should not have considered Sydney's request for sole legal custody at trial. Even if the court did not err in considering sole legal custody, Cody argues the child should not be placed in Sydney's sole legal custody. Cody also contends the district court abused its discretion in finding him in contempt for failing to pay attorney fees as ordered, arguing he lacked the ability to pay. Finally, he maintains the court should not have awarded Sydney trial attorney fees. Both he and Sydney request appellate attorney fees. Facts specific to the claims on appeal will be set forth below.

### A. Admission of the Custody Evaluation.

In May 2018, Sydney petitioned for custody, visitation, and support of the parties' minor child. In October 2018, Cody moved for the appointment of a custody evaluator. Cody's motion's prayer specifically requested Susan Gauger be appointed as the custody evaluator. Sydney agreed that Gauger should be appointed to perform a custody evaluation. The court then entered an order stating "the parties have stipulated to the appointment of a custody evaluator and that it is in the best interest of the parties' minor child to order a custody evaluation herein."

The court appointed Gauger as the custody evaluator and directed Gauger to submit her report to the court and the parties at least sixty days before trial.

In December 2018, before Gauger's evaluation was finished, Cody designated Gauger as an expert witness who might be called at trial. In March 2019, before trial, Cody filed his anticipated witness and exhibit list. He did not list Gauger as a witness or her report as an exhibit, but did list "[a]ny witness listed or called by another party" and "[a]ny exhibit listed by another party." The next day, Sydney filed her anticipated witness and exhibit list, which listed the "Child Custody Evaluation" as an expected exhibit. It did not list Gauger as an anticipated witness. Later that same day, Cody filed an "reservation of objections" advising Sydney and the court he was reserving "foundation, identification and authentication objections" to several of Sydney's listed exhibits, including the custody evaluation.

At trial, Sydney offered the custody evaluation as an exhibit, and Cody objected. Cody's counsel stated:

> I'm going to strongly object to this report. I can't cross-examine a piece of paper. If Ms. Bowlin wanted to use this report, she should have went through the steps to make sure the custody evaluator was here to answer questions to lay foundation to this. The report is simply hearsay. It's also hearsay within hearsay.

In response, Sydney's counsel noted the evaluator had only provided a copy of her evaluation to the parties, not the court. Because the court's order specifically stated the evaluation was to be filed with the court, Sydney's counsel argued the evaluation should be admitted in compliance with the order.

The court admitted the exhibit subject to Cody's objection and stated if it determined the objection should be sustained, the court would not consider the report in its ruling. Later, in the court's post-trial written ruling, the court found

Cody's motion should be overruled and the evaluation admitted, citing to section 598.12B (2018) and chapter 63 of the Iowa Court Rules. The court also found Cody waived any hearsay objection because "[h]e filed the motion requesting the report and stipulated to entry of the order that directed the preparation and dissemination of the report, not only to the attorneys, but to the court."

Having determined the exhibit should be admitted, the court then decided how much weight to give the exhibit. The court found the evaluation helpful but not outcome determinative. The court disagreed with Gauger's recommendation that joint legal custody be granted to the parties. The court did not consider the report any further.

On appeal, Cody maintains the court erred in admitting the custody evaluation into evidence, arguing that "at no point in time did the legislature or supreme court indicate that these types of reports [like the one from Gauger] were an exception to the rule against hearsay as the district court indicates." He also points to *In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981), as support for excluding the report from evidence. We disagree with Cody on both counts.

Before July 1, 2017, section 598.12, then titled "Attorney or guardian ad litem for minor child—investigations," contained five subsections. *See* Iowa Code § 598.12 (2017). The first subsection permitted the court to appoint an attorney to represent the parties' minor child or children's legal interests in the custody matter. *See* Iowa Code § 598.12(1). Subsection two permitted the court to appoint a guardian ad litem (GAL) to represent the parties' minor child or children's interests in the custody matter. *See id.* § 598.12(2). Subsection three allowed the court to

appoint one person to serve as the child or children's attorney and GAL. *See id.* § 598.12(3). Subsection four permitted the court to

> require . . . an appropriate agency make an investigation of both parties regarding the home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute . . . . The investigation report . . . shall be submitted to the court and available to both parties. The investigation report completed by the appropriate agency *shall be a part of the record unless otherwise ordered by the court.*

*See id.* § 598.12(4) (emphasis added). Subsection five is not relevant here.

In 2017, the legislature passed a bill, effective July 1, 2017, separating various subsections of 598.12 into three distinct sections. *See* 2017 Iowa Acts ch. 43; *see also In re Marriage of Erpelding*, 917 N.W.2d 235, 245 n.9 (Iowa 2018) (discussing amendments). Section 598.12 is now titled "[GAL] for minor child" and relates only to the appointment of a GAL. *See* Iowa Code § 598.12 (2018). That section explicitly states the GAL "shall not testify, serve as a witness, or file a written report in the matter." *Id.* § 598.12(1)(a)(6). The 2017 legislation added sections 598.12A and .12B. *See* 2017 Iowa Acts ch. 43, §§ 3, 4. Section 598.12A is titled "Attorney for minor child" and concerns the appointment of an attorney. Like section 598.12, this new section states the appointed attorney "shall not testify, serve as a witness, or file a written report in the matter." Iowa Code § 598.12A(1)(a)(5) (2018).

The last addition, section 598.12B, is titled "Child custody investigators and child and family reporters." Under section 598.12B(1), the Iowa Supreme Court must "prescribe and maintain standards for child custody investigators and child and family reporters." Additionally, section 598.12B(2) provides:

> The court may require a child custody investigator or a child and family reporter to obtain information regarding both parties' home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute concerning custody of the child or children. A report of the information obtained *shall be submitted to the court and available to both parties. The report shall be a part of the record unless otherwise ordered by the court.*

(Emphasis added.) Reports from an appointed investigator or reporter are treated differently than the reports of an appointed GAL or attorney. *Compare id.* § 598.12B(2) *with id.* §§ 598.12(1)(a)(6), .12A(1)(a)(5).

After the legislative changes in 2017, the Iowa Supreme Court in August 2018 adopted chapter 63 of the Iowa Court Rules, setting forth standards of practice for child and family reporters (CFRs) in child custody cases. *See* Iowa Ct. R. 63 Standard 1. The commentary to Standard 4(C) of Rule 63 states:

> Pursuant to Iowa Code section 598.12B(2) (2017), the CFR's report must be submitted to the court and available to all parties. The CFR's report will be a part of the record unless the court otherwise orders. Any party may call the CFR as a witness. If called as a witness, the CFR may be cross-examined concerning the report.

The 2017 changes to section 598.12 were in operation when Sydney filed her petition and when Cody moved for the appointment of the evaluator. Thus, if Gauger was a CFR as the term is used in section 598.12B(2) and chapter 63 of the court rules, her report was required to be part of the record unless otherwise ordered by the court. Cody does not assert Gauger was *not* a CFR. Instead, he tries to distinguish the terms used in section 598.12B(2), a "child custody investigator" and a CFR. As his argument goes, because chapter 63 only refers to CFRs, it must exclude child custody investigators from the standards set out in it, including that the CFR's report must be submitted as part of the record unless

the court finds otherwise. Thus, Cody asserts the court's reliance on chapter 63 of the court rules is in error.

Even assuming this argument has merit, it ignores the language of section 598.12B(2) the applicable law in this case, unlike the standards in chapter 63 of the court rules, which are aspirational. *See* Iowa Ct. R. 63 Standard I(2) & (3). Under section 598.12B(2), a report from either a CFR or a "child custody investigator" must be submitted to the district court unless the court orders otherwise. Any distinction between a CFR and a "child custody investigator" is without difference under section 598.12B(2). The court did not err in abiding by the language of section 598.12B(2).

Even if the pre-July 2017 provisions applied, the result would be no different. Although Cody cites *Williams* as supporting his argument, *Williams* is distinguishable from this case. *See* 303 N.W.2d at 163. In *Williams*, the supreme court explained that such reports are inadmissible hearsay "*[u]nless* [the] written report is properly before the court by agreement or stipulation." *Id.* Cody ignores the "unless" part of the equation.

Here, the district court did not appoint Gauger on its own motion. Rather, the court appointed Gauger after Cody requested the appointment and Sydney agreed. The language of Cody's motion, mirrored in the court's order, required Gauger to file her report with the court. We believe the parties' agreement to the *appointment* of the evaluator overcomes any hearsay objection under these facts, absent some showing of prejudice by the party opposing entry of the report. Cody not only requested the evaluator's appointment, he listed Gauger as a potential expert witness. So there is no question Cody had adequate notice of the subject

matter of the evidence and was not unfairly surprised by admission of the report into evidence. There is also nothing that suggests Cody could not have called Gauger himself.[1]

Finally, the district court did not rely solely on the report in making its decision. It even reached a decision against the recommendation of the evaluator. Under the facts here, the court did not err in admitting the report into evidence, and it did not abuse its discretion in determining what weight to place upon the report. Moreover, because our review is de novo, we can ignore the evaluator's report in our determination to avoid any error. *See, e.g.*, *Williams*, 303 N.W.2d at 163 ("Because our review is de novo, we disregard the report in our consideration of the issues."); *In re Marriage of Schneckloth*, 320 N.W.2d 535, 536 (Iowa 1982) ("In according de novo review, this court disregards evidence to which meritorious objection was made and considers all admissible evidence."). Because the evaluation is unnecessary for us to reach the merits of the issues presented on appeal, we do not consider the evaluation in our consideration of the issues raised. For all of these reasons, we affirm the district court's admission of the evaluator's report into evidence at trial.

### B. Sole Legal Custody.

Cody argues the district court should not have considered Sydney's request for sole legal custody because she requested joint legal custody in her petition and claims he did not have adequate notice that she was requesting sole legal custody. He also argues placement of the child in Sydney's sole legal custody was not in

---

[1] The comment to Iowa Court Rule 63 standard IV(C) states: "Any party may call the CFR as a witness."

the child's best interests or supported by facts in the record. We address Cody's arguments in turn.

### 1. Notice.

As Cody points out, Sydney's petition for custody stated she was requesting the child be placed in her and Cody's joint legal custody. Sydney made no formal filing stating she was changing her request from seeking joint legal custody to sole legal custody. Cody contends he therefore did not have proper notice of her request and the court should not have even considered her changed custody request. But the record shows that Cody was or should have known that Sydney was seeking sole legal custody at trial.

After entry of a protective order, Sydney provided a proposed temporary custody order which proposed to grant her sole legal custody. In her answers to interrogatories served on Cody's counsel in September 2018, Sydney stated she was seeking sole legal custody. Sydney testified she was requesting sole legal custody with no objection raised by Cody. The court also admitted at trial Sydney's exhibit showing she was requesting sole legal custody, again with no objection by Cody. Cody could have requested a continuance if he was surprised by her trial declaration that she was seeking sole legal custody. He did not. Upon our review, we find there is no question sole legal custody was before the court and was tried and considered without objection from Cody. So we reject this challenge to the sole legal custody award.

### 2. Merits.

"Iowa Code chapter 600B confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between

unmarried parties." *Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App. 2005). Relevant here, "section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41"—section 600B.40's counterpart for divorcing or separating parents. *See id.*; *see also Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 891 n.3 (Iowa 2009); *Hensch*, 902 N.W.2d at 825.

Legal custody constitutes parental rights and responsibilities that include but are "not limited to decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(5). Joint legal custody means that "neither parent has legal custodial rights superior to those of the other parent." *Id.* § 598.1(3).

Our overriding consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o). In considering what custodial arrangement is in the child's best interest, we consider the nonexclusive factors set out by our legislature in Iowa Code section 598.41(3).2. *See* Iowa Code § 600B.40(2) ("In determining the visitation or custody arrangements of a child born out of wedlock, . . . the court shall consider the factors specified in section 598.41, subsection 3.") We also consider (1) stability, continuity of caregiving, and approximation; (2) the ability of the parents to communicate and show mutual respect; (3) the degree of conflict between parents; and (4) the degree to which the parents generally agree about their approach to daily matters. *See Hansen*, 733 N.W.2d at 695; *see also In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997); *Hensch*, 902 N.W.2d 822. Parents' "utter inability to communicate with each other" as a result of their "toxic relationship" weighs against joint legal custody. *See Gensley*, 777 N.W.2d at 715.

The parties' inability to communicate and cooperate must rise above the "usual acrimony that accompanies a divorce." *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985). "If the district court does not grant joint legal custody, the court must cite clear and convincing evidence, according to the enumerated factors listed above, that joint legal custody is unreasonable and not in the children's best interests 'to the extent that the legal custodial relationship between the child and a parent should be severed.'" *Gensley*, 777 N.W.2d at 714 (citing Iowa Code § 598.41(2)(b)).

The parties' testimony provided differing accounts of the parties' relationship, each party's flaws and negative behaviors, and the party's relationship and care of their child. While we are not bound by the district court's findings of fact, they are still persuasive, given the court had a chance to view the parties and hear the testimony. *See In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). Here, the district court explicitly found Sydney was more credible than Cody. Upon our de novo review of the record, we find no reason to disturb the court's credibility determination.

As for Cody's conduct, the district court found:

> As pertinent to the issues of legal custody and physical care, prior to the separation, Cody engaged in angry outbursts, perhaps related to his drinking, and would demean Sydney and call her profane names. He hid her cell phone. He damaged her property and damaged the residence they were living in. He attempted to alienate her from friends and family. He began surreptitiously recording communications with her. Cody controlled the finances, but that was due, at least in part, to the fact that the parties were not married and Cody earned substantially more than Sydney. Their cohabitation was punctuated by several temporary separations when Sydney would leave with [the child] and stay with neighbors or friends.

The parties' relationship since the separation and after entry of the temporary orders has been marred by conflict over medical care, daycare, and parenting time exchanges. . . . Cody has scheduled conflicting medical appointments for [the child] and provided Sydney and her attorney with, at best, inaccurate information about medical care he had arranged for [the child]. He reported Sydney to [the Iowa Department of Human Services (D.H.S.)] for child abuse based upon scratches and abrasions that a doctor concluded were "not suspicious." Cody reported . . . [the child's] daycare provider and by all accounts highly qualified and very responsible, to D.H.S. for having too many children at her daycare contrary to D.H.S. rules or regulations. Cody filed this report even though it appears that [the parties' child] may have been the child that resulted in the alleged violation. Cody contacted Sydney's landlord alleging that Sydney was not accurately reporting her income and suggesting that she was not eligible for the low-income apartment or her rent should be raised. This action was vindictive and mean-spirited, and not justified by any legitimate goal.

The court noted another problem area "was Sydney's relationship with Cody's family, primarily his mother and three older sisters. . . . Suffice it to say that the relationship between Sydney and Cody's family is not good." The court found "Sydney objected to Cody delegating his parental duties to his family" and believed "Cody uses his family as a crutch to avoid performing the duties she believes he should be doing." The court found that contrary to Cody's claim that this evidence tended to prove that Sydney could not support his relationship with the child,

Sydney has attempted to support that relationship. Most significantly, even after being granted temporary physical care, she remained in Indianola rather than move to Kalona where her family resides. According to her, this was so that [the child] would remain close to Cody and so that Cody would be able to exercise his scheduled visitation.

Based on these findings of fact, the district court found joint legal custody was not feasible, explaining:

The parties agree that they have demonstrated virtually no ability to communicate constructively about issues related to [their child]. Cody has demonstrated a pattern of behavior that prevents

these parties from making joint decisions regarding [the child's] medical care, daycare, and daily routine. Though he has ostensibly attempted to participate in some of these decisions, his participation has been at cross-purposes with Sydney and does not evidence a desire to cooperate and work with her. The evidence strongly supports the conclusion that his conduct has been motivated primarily to control Sydney, create the appearance of involvement, and construct a case for primary physical care. It would be problematic to extend joint legal custody permanently thus prolonging the conflict relating to [the child's] medical care, daycare, and daily routine.

In some cases, a high level of conflict is directly related to the separation or pending litigation, and in those cases sometimes there is evidence that the conflict will subside over time. In those cases joint legal custody may be appropriate despite the high level of conflict. In light of this record, I cannot conclude that it is foreseeable that the conflict between these parties will subside over time to the point where they can effectively cooperate in making joint decisions about [the child's] health, education and welfare. The conflict in this relationship involves [the child's] care directly, not tangentially. Continuing joint legal custody will more likely than not prolong the conflict.

Upon our de novo review of the record, we defer to the district court's credibility assessments and conclude the district court's factual findings were fully supported by the record. We agree with the court that Cody's actions show joint legal custody was not a viable option here. We note that our decision on de novo review to affirm the award of sole legal custody to Sydney does not seek to punish Cody, but rather our effort to provide for their child's best interests. For these reasons, we affirm the district court's ruling awarded Sydney sole legal custody of the parties' child.

### C. Contempt.

Cody also contends the district court abused its discretion in finding him in contempt for failing to pay court ordered attorney fees. Iowa Code section 598.23 provides that a court may cite and punish persons for contempt if they willfully

disobey a temporary or final order or decree. "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Ary*, 735 N.W.2d at 624. "There are two ways in which the contemner may show that a failure to comply with a court order was not willful: (1) the order was indefinite; or (2) the contemner was unable to perform the act ordered." *Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 790-91 (Iowa Ct. App. 2008) (citation omitted). "When a party claims an inability to pay, the test is whether there is any property out of which payment can be made, not merely whether the party claiming an inability to pay is presently working or has current funds or cash on hand." *Ary*, 735 N.W.2d at 625.

Our review of a district court's contempt ruling under chapter 598 is highly deferential. *See Swan*, 526 N.W.2d at 327. Under *Swan*, the trial court may consider all the circumstances, not just whether a willful violation has been proven in deciding whether to impose punishment for contempt. *See id.*; *see also In re Marriage of Jones*, No. 17-1113, 2018 WL 2725371, at *1 (Iowa Ct. App. June 6, 2018) (discussing *Swan*). Even if the elements of contempt exist, the trial court has discretion to determine whether the court should hold the contemner in contempt. *See id.*

Sydney testified Cody had not paid the attorney fees the court ordered within the time ordered to pay, meeting her prima facie burden of showing Cody violated the court's order. Cody testified at trial he lacked the ability to pay Sydney the court-ordered attorney fees at that time, explaining his monthly expenses exceeded his net monthly income. He said would have paid them had he had the ability to pay. He noted he had made a few payments since he was ordered to do

so. The district court was not convinced and concluded "the evidence did establish beyond a reasonable doubt that Cody was in willful and wanton disregard of that temporary order by failing to pay the amount ordered or, at the very least, a significantly greater amount than he has in fact paid."

Upon our de novo review, we find substantial evidence supports the trial court's determination that Cody willfully failed to pay the amount ordered by the court. Although Cody presented evidence of financial hardship, there was also evidence that Cody had been under employed over the summer and that Cody was not paying all the expenses he claimed, which would have freed-up some money to comply with the court's order. Cody chose to favor his personal monthly expenses, such as internet and telephone service, over his court-ordered obligation to Sydney. If Cody could not pay, he should have notified the court and requested the court's ordered payment plan be revised or made other arrangements for paying the ordered amount. Cody was not free to simply not pay the amount ordered and do nothing. Upon our de novo review, we cannot say the district court abused its discretion in finding Cody willfully and wantonly disregarded its order and holding Cody in contempt under these facts.

### D. Trial Attorney Fees.

Cody asserts the district court abused its discretion in awarding Sydney trial attorney fees in the amount of $7500. The "abuse of discretion" standard is our most deferential standard of review. *See State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). "Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003) (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). The fees must be fair and

reasonable and whether they should be awarded depends on the respective abilities of the parties to pay. *See id.*

Upon our de novo review, we cannot say the district court abused its discretion in its attorney fee award. The court considered the requisite factors. We therefore affirm the award of attorney fees.

### E. Appellate Attorney Fees.

Both parties request appellate attorney fees. "In a proceeding to determine custody or visitation, . . . the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. "An award of appellate attorney fees is within the discretion of the appellate court." *In re Petition of Fiscus*, 819 N.W.2d 420, 425 (Iowa Ct. App. 2012) (citation omitted). In determining whether to award attorney fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citation omitted).

Cody is not a prevailing party and is therefore not entitled to the award of appellate attorney fees. After considering the appropriate factors, we decline to award Sydney attorney fees. Any costs are assessed equally to the parties.

### III. Conclusion.

Upon our de novo review of the entire record and considering the relevant law, we conclude the district court did not err or abuse its discretion in admitting the custody evaluator's report into evidence. In any event, because our review is de novo and consideration of the report is unnecessary to reach the issues present here, we do not consider the report in our decision.

On the issues over sole legal custody, we reject Cody's challenge to the sole custody award for lack of adequate notice, and we agree with the court that Cody's actions show joint legal custody was not a viable option here.  Additionally, upon our review, we cannot say the district court abused its discretion in finding Cody willfully and wantonly disregarded its prior ruling that ordered Cody to pay an amount of Sydney's attorney fees by a certain date.  Finally, we cannot find the district court abused its discretion in awarding Sydney trial attorney fees.  For all of these reasons, we affirm the district court's custody ruling in all respects.  We decline to award appellate attorney fees.  Any costs on appeal are assessed equally to the parties.

**AFFIRMED.**