# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0672
Filed April 1, 2026

————————

**In the Matter of the Estate of Richard D. Janssen, Deceased.**

**Gary Dean Janssen and Larry Dale Janssen,**
Plaintiffs-Appellants/Cross-Appellees,

v.

**The Security National Bank of Sioux City, as Executor of the Estate of Richard D. Janssen, and Sheryl Ann Collins, Individually,**
Defendants-Appellees/Cross-Appellants.

————————

Appeal from the Iowa District Court for Woodbury County,
The Honorable Zachary Hindman, Judge.

————————

**AFFIRMED ON APPEAL AND CROSS-APPEAL**

————————

Tyler M. Smith (argued) of Smith Law Firm, PLC, Altoona, and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, attorneys for appellants/cross-appellees.

Ryland Deinert (argued) of Klass Law Firm, LLP, Sioux City, attorney for appellee/cross-appellant Collins.

Colby M. Lessmann of Tigges, Bottaro & Lessmann, LLP, Sioux City, attorney for appellee/cross-appellant Security National Bank of Sioux City.

————————

Heard at oral argument
by Ahlers, P.J., Buller, J., and Doyle, S.J.
Opinion by Doyle, S.J.

**DOYLE, Senior Judge.**

This appeal follows a protracted will contest that has resulted in multiple trials due to an initial mistrial and included our supreme court's reversal of the district court's order for a new, third trial following one of the defendants' posttrial motion to dismiss. The plaintiff brothers, Gary Janssen and Larry Janssen, now appeal again, raising several purported errors in the district court's order regarding posttrial motions. Sheryl Collins, a defendant and sister of the Janssen brothers, cross-appeals, arguing the district court erred in not granting her motion for new trial based upon "irregularities and misconduct" by Gary and Larry's counsel.[1] Agreeing with the district court's thorough and well-reasoned order, we affirm the district court on both appeals.

## BACKGROUND FACTS AND PROCEEDINGS[2]

The testator, widower Richard Janssen, died on June 28, 2018. Earlier that same year, Sheryl had arranged for Richard to meet with an attorney on April 20. After meeting with the attorney, Richard signed a new will. The terms of this will departed significantly from prior wills Richard had executed. The 2018 will was admitted to probate and Security National Bank of Sioux City (SNB) was appointed executor. Gary and Larry, along with their two other brothers, Dean and Jeff, filed a will contest against Sheryl,

---

[1] As our supreme court did in *In re Estate of Janssen*, 7 N.W.3d 516, 518 n.1 (Iowa 2024), "[w]e refer to the parties by their first names throughout the rest of [this] opinion for ease of understanding and mean no disrespect to the parties." The other defendant and executor of the contested will, Security National Bank, joins Sheryl's cross-appeal.

[2] The background facts and proceedings are set forth in greater detail in *Janssen*. 7 N.W.3d at 518–20.

their other sister Debra Schultz, and executor SNB. The brothers alleged Richard's lack of testamentary capacity, undue influence by Sheryl and Debra, and tortious interference with inheritance by Sheryl and Debra. The 2019 trial resulted in a mistrial due to a hung jury.

Shortly before the second trial, Dean and Jeff removed themselves as parties by voluntarily dismissing their claims. In June 2021, the district court granted Gary and Larry's motion to bifurcate, ordering:

> [T]he issue of calculation of the amount of attorney fees, executor fees, and estate fees which [Gary and Larry] are entitled to recover, in the event that [Gary and Larry] prevail on the tortious interference with inheritance claim, shall not be presented to the jury, and shall not be resolved by the jury. Rather, in the event that [Gary and Larry] prevail on that claim, a separate, later evidentiary hearing shall be held before the Court.

The day before the second trial began, Gary and Larry moved to dismiss their testamentary-capacity claim and "all claims" against Debra, which the district court granted without objection, leaving only a will contest premised on undue influence and a tort claim against Sheryl for intentional interference with inheritance. The second trial ended in July 2021. The jury concluded that Sheryl had engaged in undue influence and found that the 2018 will resulted from Sheryl's tortious interference. The jury further found that Gary and Larry had suffered $480,000 in compensatory damages and awarded them $2 in punitive damages.

The parties filed posttrial motions, including Sheryl's motion for new trial for failure to join an indispensable party—Debra, who had been voluntarily dismissed as a defendant before the second trial. The district court granted Sheryl's motion for new trial, and Gary and Larry appealed that order. Our supreme court reversed the trial court's order, holding that an indispensable party need not remain joined until final judgment to fulfill

4

the requirements of Iowa Code section 633.312 (2018) if that party has "affirmatively agree[d] to be dismissed" from the will contest. *See Janssen*, 7 N.W.3d at 525–26.

Trial on the bifurcated damages issue and a hearing on unresolved post-trial motions took place in August 2024. Thereafter, the district court entered a 112-page Findings of Fact, Conclusions of Law, and Order/Order Re: Post-Trial Motions. Gary and Larry now appeal, and Sheryl and SNB cross appeal.

## STANDARD OF REVIEW

We review an action to set aside a will for errors at law. *In re Est. of Bayer*, 574 N.W.2d 667, 670 (Iowa 1998). Tortious interference with a bequest is also an action at law. *See Frohwein v. Haesemeyer*, 264 N.W.2d 792, 795 (Iowa 1978), *overruled in part on other grounds by Youngblut v. Youngblut*, 945 N.W.2d 25 , 37 (Iowa 2020).

We review denials of motions for new trial based on misconduct for abuse of discretion. *See Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). Denial of a motion for new trial on the basis the award was inadequate is reviewed for abuse of discretion. *Fisher v. Davis*, 601 N.W.2d 54, 57 (Iowa 1999). Likewise, we review the refusal to grant an additur for abuse of discretion. *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 417 (Iowa 1997).

## DISCUSSION

Gary and Larry argue the district court erred in (1) denying their claim for their attorney fees and expenses incurred in contesting Richard's 2018 will; (2) annulling the jury's award of $480,000 in compensatory damages for tortious interference; (3) denying their motion for additur to increase the

jury's compensatory damages award to $2,431,271.33; (4) denying their motion for additur or new trial on the jury's award of punitive damages; and (5) approving SNB's executor fees and attorney fees, ordering them to be paid by Richard's estate, and declining to charge the fees to Sheryl. Sheryl and SNB cross appeal, arguing the district court abused its discretion in denying Sheryl's motion for new trial based on Gary and Larry's counsel's purported misconduct during trial. We address each issue in turn.

## I.    Attorney Fees and Expenses

Gary and Larry argue they are entitled to attorney fees and expenses "because they are compensatory damages on the tort claim."

Attorney fees are recoverable as consequential damages in tortious-interference-with-inheritance actions. *Huffey v. Lea*, 491 N.W.2d 518, 522 (Iowa 1992), *overruled in part on other grounds by Youngblut*, 945 N.W.2d at 37. "[A] person who, through the tort of another, has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation from the tortfeasor for expenditures thereby incurred." *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380 (Iowa 1983). Attorney fees resulting as "a natural consequence of the tort" are recoverable. *See id.*

As the district court observed, we have affirmed the tortious-interference-claim portions of attorney fee awards in recent years. *See, e.g.*, *In re Est. of Erickson*, No. 17-0430, 2018 WL 3471093, at *1, *3 (Iowa Ct. App. July 18, 2018) (affirming attorney fee award to prevailing party on tortious-interference-with-a-bequest claim and noting the district court's "considerable discretion in taxing fees"); *Bronner v. Randall*, No. 14–0154, 2015 WL 2089360, at *9–10, *9 n.6 (Iowa Ct. App. May 6, 2015) (observing that recoverable attorney fees are limited "the fees incurred trying to correct

6

or remedy the tortious action of the defendant, not the fees incurred in suing the defendant for tortious interference").

The district court found that Gary and Larry "may recover, as damages, attorney fees that they incurred in litigating their will contest, so long as their involvement in the will contest was caused by Sheryl's tortious conduct, and to the extent that the attorney fees they seek are reasonable." So the district court was faced with the task of determining whether Gary and Larry's claimed attorney fees were "in whole or in part" based on Sheryl's tortious conduct. *See Worth v. Pierson*, 223 N.W. 752, 755 (Iowa 1929) ("Fraud [and] undue influence are two separate grounds for the setting aside of a will." (cleaned up)). But it is sometimes difficult to separate the undue-influence claims in a will contest from the tortious-interference claims since "there usually is some fraud present in a pure case of undue influence." *See id.*

Thus, the district court found that based on the facts of this case, the jury could have determined that the 2018 will was the result of both undue influence and fraud. Yet Gary and Larry's motion to bifurcate made no request that the district court "determine[] the scope of Sheryl's tortious conduct, including for the purpose of deciding whether that tortious conduct was a cause of the will contest." Consequently, the district court observed that it "has no way of knowing whether, as a factual matter, there exists a causal connection running from the particular fraud to the particular undue influence already found by the jury to have occurred in this case." As the court noted, such a determination would require it to speculate "among all of the ways the jury possibly could have decided that the essential elements of that claim were satisfied." That said, the district court determined Gary and Larry had a good-faith basis to bring their claims based on Sheryl's

7

tortious acts, and they may recover their attorney fees. *See Turner v. Zip Motors, Inc.*, 65 N.W.2d 427, 431 (Iowa 1954) ("[I]f through the tort of A, B is in good faith involved in litigation with C, . . . B may then recover the reasonable value of his expense for employment of counsel . . . from A.").

But ultimately, the district court declined to award Gary and Larry their attorney fees due to general and imprecise fee and expense documentation submitted. The court specifically noted that Gary and Larry's attorney failed to "set[] forth with any precision the number of hours that the attorneys spent on this case" or "distinguish[] time spent by the attorneys' work on matters relating to the portion of the will contest alleging undue influence by Sheryl, as opposed to work performed solely in relation to other claims or former claims." A billing affidavit was submitted which asserted $8,286.94 in expenses and costs were advanced, but the referenced itemization was missing. Counsel further cited time used preparing a proposed ruling that was never filed, and estimated 1,200 attorney hours and 300 staff hours were spent.

Due to counsel's general and conclusory claims relating to the time and money spent on litigating the case, including questions over the specific terms of the contingent-fee arrangement[3] between Gary and Larry and their counsel, the district court found it impossible to accurately assess the amount of fees attributable to the undue-influence claims. We agree. Because recoverable attorney fees here are an exception to the general rule that "attorney fees are recoverable only by statute or under a contract," *see In re Guardianship of Radda*, 955 N.W.2d 203, 214 (Iowa 2021) (citation omitted), it was incumbent upon Gary and Larry to delineate how their counsel's time

---

[3] No written fee contract was made part of the record.

was billed. The district court did not err in declining to speculate as to how attorney time was spent or to the specific terms of the contingent-fee arrangement.

## II. Annulment of Compensatory-Damages Award

Sheryl moved to strike the jury's award of $480,000 in compensatory damages, arguing the award was duplicative. Because Gary and Larry prevailed in the will contest, Sheryl argued their respective portions of Richard's estate under his prior 2014 will exceed the $480,000 compensatory-damages award. The district court agreed and set aside the compensatory-damages award, citing our decision in *Bronner* as the closest factual comparison to the compensatory-damages issue here. *See* 2015 WL 2089360, at *15 (vacating jury award of $22,706.55 loss of expectancy from an investment account when reinstatement of prior beneficiary designation provided for the plaintiff's right to $22,706.55 from that investment account). Our supreme court has recognized that trial courts may apply remittitur to resolve issues of duplication of damages. *See Nassen v. Nat'l States Ins. Co.*, 494 N.W.2d 231, 237 n.2 (Iowa 1992); *see also Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 924–25 (Iowa 1978) ("Setting aside the judgment . . . as duplicative . . . was proper.").

Gary and Larry argue that the district court should have instead deferred entry of judgment on the $480,000 compensatory-damages award pending resolution of probate on the 2014 will, since the 2014 will is only *presumptively* valid following the 2018 will being set aside. But the district court addressed this possible resolution, determining it unnecessary since the parties all agreed the compensatory-damages award was duplicative. Gary and Larry contend there was no such agreement, but their counsel suggested otherwise before closing arguments for punitive damages, stating

that "[e]verybody agrees that [the $480,000 award is] going to be remitted, it's going to be consumed by the estate." Because the compensatory-damages award was duplicative and the parties agreed to such, the district court did not error in setting aside and in not entering judgment on the jury award for compensatory damages on Gary and Larry's tortious-interference-with-inheritance claim.

## III.  Additur to Compensatory-Damages Award

Gary and Larry moved for additur on compensatory damages, requesting an increase from $480,000 to $2,431,271.33, asserting that the parties agreed that the damages resulting from tortious interference was the latter figure. The district court declined to do so, concluding the compensatory-damages award was consistent with the evidence presented at trial.

"The district court may permit a party to avoid a new trial under rule 1.1003 or 1.1004 by agreeing to such terms or conditions as it may impose," which may include "a choice between consenting to a reduced, modified or increased judgment amount or proceeding to a new trial." Iowa R. Civ. P. 1.1010(1)–(2). But "[n]either the district court, nor this court, should disturb the jury's verdict unless it is flagrantly excessive or inadequate or so out of reason so as to shock the conscience." *Vagts v. N. Nat. Gas Co.*, 8 N.W.3d 501, 520 (Iowa 2024). We give "great weight" to the jury's damages award. *Id.*

Like the district court, we decline to apply additur to the damages award. As the court explained, "[t]he total value of [the] estate, according to the inventory that is in evidence . . . is $2,882,692.66." If split six ways, that would amount to a roughly $480,000 disposition per child. While this suggests that the jury should have awarded *each* brother $480,000, the court

observed that the jury may have taken into account the unequal disposition of the estate of Richard's pre-deceased wife and the possibility that Sheryl may have "legitimately persuaded Richard" to consider that unequal disposition, thus reducing his bequest to Gary and Larry by half. Gary and Larry argue this is speculation by the district court, but it is likewise speculation to assume, without further context or explanation, that the jury erred in its damage calculations. The district court's reasoning for deciding against additur was sound and persuades us that the jury's award was not "flagrantly . . . inadequate." *See id.*

## IV.    Additur or New Trial on Punitive-Damages Award

Gary and Larry moved for additur or new trial based on inadequate punitive damages. The jury awarded two dollars in punitive damages. Gary and Larry contend the inadequate damages stem from the jury's misunderstanding of the law, insufficient evidence, or other error.

We decline to modify or vacate the district court's ruling on additur to the punitive-damages award. Gary and Larry suggest that the jury misunderstood the concept of punitive damages because they asked a question about the meaning of the term "*in terrorem*" during their deliberations. That term was found in the 2014 will and reduces a will beneficiary's disposition to one dollar if they contest the will. If the jury truly and mistakenly believed that the *in terrorem* clause under the 2014 will had been triggered, it is unclear why they would also award Gary and Larry $480,000 in compensatory damages. Nor is there any evidence that the jury misunderstood the punitive damages—the jury instructions expressly described the difference between compensatory and punitive damages. Lastly, Gary and Larry cite no authority for their claim that a defendant's failure to express regret makes punitive damages required as a matter of law.

We do not find that failure informative as to Sheryl's state of mind at the time she committed the tort. *See Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 378 (Iowa 1997) ("To support an award of punitive damages, the tort must be committed with either actual or legal malice.") We concur with the district court's ruling on this issue.

## V.     Assessment of Executor Fees and Expenses

Gary and Larry finally contend that the district court erred in assessing executor fees and expenses to the estate rather than to Sheryl.

When an executor "defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, that [executor] shall be allowed out of the estate necessary expenses and disbursements, including reasonable attorney fees in such proceedings." Iowa Code § 633.315. "[T]he executor carries the burden of proving [that] he or she acted in good faith and with just cause in engaging in the proceedings" for which attorney fees are sought. *In re Est. of Wulf,* 526 N.W.2d 154, 156 (Iowa 1994).

The district court determined SNB's requested executor and attorney fees were reasonable and incurred in good faith. Gary and Larry largely argue that SNB's participation was not in good faith due to SNB siding with Sheryl rather than them on most issues. But as the district court points out, SNB and Sheryl's interests "overlapped to a considerable degree." And to the extent SNB participated beyond what was necessary, e.g., Gary and Larry's tort claim, the district court expressly excluded those fees from the fees to be paid by the estate. We affirm the district court's assessment of executor fees and expenses.

## VI.  Motion for New Trial

Sheryl contends the district court abused its discretion in dismissing her motion for new trial because Gary and Larry's counsel's misconduct "caused an unfair and prejudicial trial" against them.

Even where an attorney has engaged in offensive conduct, a new trial is appropriate only when "a different result would have been probable in the absence of misconduct." *Olson v. BNSF Ry. Co.*, 999 N.W.2d 289, 300 (Iowa 2023) (citation omitted). So reversal of a denial of a new trial based on misconduct requires a showing of both misconduct and prejudice resulting from that misconduct. *See id.* Trial courts have broad, but not unlimited, discretion in determining whether such misconduct was prejudicial. *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011). "We have long recognized that trial judges' advantageous point of view" requires that their determinations "be given significant weight" since our "analysis is confined to words written on a page." *Olson*, 999 N.W.2d at 300. But for a motion for new trial based on misconduct to be granted, the moving party must file a timely objection. *See State v. Phillips*, 226 N.W.2d 16, 18–19 (Iowa 1975). Failure to timely object or move for mistrial "before submission of the case to the jury . . . constitutes a waiver of the misconduct." *Id.*

As the district court observed, as to closing arguments, Sheryl

> neither objected to the alleged misconduct about which she now complains, at the time of that conduct, nor requested a mistrial or other action of the Court before [Gary and Larry's] claims were submitted to the jury. Instead, she opted to address the issue in her own closing, in an apparent attempt to undermine the credibility with the jury of [Gary and Larry] and their counsel.

On appeal, Sheryl argues that attorney statements during closing arguments can be "so flagrantly improper and evidently prejudicial" as to

warrant a new trial even in the absence of an objection. *See Buboltz v. Birusingh*, 962 N.W.2d 747, 759 (Iowa 2021). We agree with the district court that Sheryl made the strategic choice to address the statements by opposing counsel in her own closing argument. Our error-preservation rules exist in part to prevent parties from choosing silence "in the face of error, tak[ing] a chance on a favorable outcome, and subsequently assert[ing] error on appeal if the outcome in the trial court is unfavorable." *State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022). Sheryl's choice to address the statements in her own closing reflect this conscious choice.

But Sheryl did object to what she characterizes as an improperly spliced audio recording that Gary and Larry's counsel played for the jury during closing arguments. Counsel played audio recordings for the jury that were spliced to play different portions of single recording.

Sheryl fails to identify how any alleged misconduct was prejudicial to the extent that it was "flagrantly improper." *See Buboltz*, 962 N.W.2d at 759; *State v. Williams*, 574 N.W.2d 293, 300 (Iowa 1998) ("Mere general assertions of prejudice are not sufficient."). Indeed, the jury was expressly informed upon Sheryl's objection—if it was not already clear—that the audio being played for them had been condensed. And the court told the jury to rely on their own recollection of the evidence and their own review of the evidence.

Error is not preserved on any challenged statements which were not timely objected to, and Sheryl has failed to identify prejudice on any other challenged statement.

## CONCLUSION

Upon our review, we affirm the district court's order on Gary and Larry's appeal. We also find no abuse of discretion in the district court's

denial of Sheryl's motion for new trial and affirm on Sheryl's and SNB's cross-appeal.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**